# Clark, Appellant, *v.* Burschell.

*Taxation—Assessment—Appeal from assessment—Excessive valuation —Legality of assessment—Equity.*

The remedy of a citizen aggrieved by an excessive valuation of his property is by an appeal to the county commissioners and to the court of common pleas. He has no standing to raise such an inquiry by a suit in equity.

A bill in equity attacking the legality of a tax assessment on the ground that the valuations had not been fixed by the assessors acting together as a board, is properly dismissed where the court finds as a fact that although the assessors each made a separate estimate they had subsequently met as a body, and made a final assessment.

Argued Feb. 24, 1908. Appeal, No. 52, Jan. T., 1908, by plaintiffs, from decree of C. P. Lackawanna Co., Sept. T., 1907, No. 15, dismissing bill in equity in case of John H. Clark et al. v. Victor Burschell et al. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

NEWCOMB, J., filed the following opinion.

### CONCLUSIONS OF FACT.

1. The plaintiffs are resident taxpayers of the borough of Dunmore, in this county. Each in his own behalf has taken an appeal from his assessment in the borough as finally adjusted by the county commissioners sitting as a board of revision for the year 1907. The appeals are still pending for trial in the common pleas of this county. The defendants are the county commissioners; " the burgess and town council, . . . . the school directors of the school district . . . . and William J. McCarty, collector of taxes of the borough of Dunmore." Who the burgess is, and who are the men composing the council and school board are not shown. Defense was taken by the commissioners " on behalf of all the defendants " as appears by the answer.

2. Dunmore was incorporated as a borough by special Act of assembly approved April 10, 1862, P. L. 526. By Act of

June 2, 1871, P. L. 1325, and supplement of April 9, 1872, P. L. 1053, it was divided into six wards, each of which elects an assessor for the term of three years in conformity with the provisions of the Act of February 14, 1889, P. L. 7, as amended by the Act of May 8, 1889, P. L. 133. At the spring election in February, 1904, assessors were accordingly elected in the several wards who afterwards qualified and assumed the duties of their respective offices for the term prescribed by law. The triennial assessment for 1907 occurred the last year of the term for which they were elected.

3. Some time in the fall of 1906 the blotters for this assessment were delivered to the assessors by one of the county commissioners coupled with the instructions as to their duty to organize and proceed with the assessment as a board of assessors. Thereupon the same evening they did so organize by the election of a chairman and a secretary. This was followed by a general discussion as to methods in which committees of the school board and town council took part. It was agreed that on a certain day the board as so organized should meet with these committees and go over certain principal streets with view to the adoption of some standard of valuation which it was assumed could be used by the assessors as a working basis in order to secure reasonable uniformity in assessment.

4. Three of the assessors accordingly met the committees and in the absence of the other three made some effort to carry out the plan, but failing to agree on such basis one of the assessors withdrew. The other two made some further effort looking to uniformity as between their own wards. After that each made his assessment in his own way without reference to the others, except that before returning their blotters to the commissioners there was another meeting of the assessors at the town hall for discussion. To what extent, if at all, the assessments were supervised by their organized action as a board before their returns were made is very uncertain.

5. After their blotters were returned, however, and before they were accepted by the commissioners, the assessors in a body met with the commissioners in one of the court rooms. The date of this meeting is not definitely shown, but would appear to have been in April or early in May, 1907. The school board had a representative present on that occasion.

There was also another taxpayer present, but whether as representative of the council is not clear. At that time the assessments were generally canvassed and such changes were made in the valuations as by common consent of the assessors or a majority of them were thought necessary or proper. Afterwards sitting as a board of revision the commissioners heard complaints, reviewed and adjusted the valuations. The records of the commissioners' office show that the revision for the borough of Dunmore began on May 31, 1907, and continued from day to day until complete. As so adjusted the total valuation was $4,259,283 as against the last preceding valuation of $1,979,356.

6. The assessors were instructed by the commissioners to enter full valuation on their blotters. So far as appears, in the first instance, they disregarded the instruction. Two assessed at what they considered one-third and another at some fraction not considered by him to exceed one-half the actual value. Whether the other three failed to assess at full value does not appear. In the opinion of one witness the final assessment as revised by the commissioners varies materially in a number of instances from the actual value; generally as being too low, although in a few cases he considers it too high.

### CONCLUSIONS OF LAW.

1. The Act of July 9, 1901, P. L. 613, applies to the borough of Dunmore. It requires that in making the valuation of property the assessors of all the wards shall act as a board of assessors and as such shall make the assessment of all subjects of taxation in the borough for all purposes, with return thereof, to the county commissioners, subject to their revision under existing laws. It is further provided by the act that the triennial assessment shall be made in the last year of the term for which the assessors are elected.

2. By the Act of May 15, 1841, P. L. 393, assessors are required to assess each subject of taxation at its market value as nearly as it can be ascertained.

3. In this case, while the assessors organized as a board, they failed to conform to the act of 1901 in making the 1907 assessment except as they met with the commissioners in a body and adjusted the assessment after their blotters had been returned as stated in the fifth conclusion of fact.

4. The presumption is that the commissioners, local author-

ities and all other persons concerned had the benefit of the concurrent action of the assessors in that adjustment. There is nothing to overcome this presumption. The conclusion is, therefore, warranted that in this way the purpose of the statute was substantially accomplished.

5. Jurisdiction to inquire whether the assessment was made in conformity with the laws of the commonwealth and property assessed at not less than its actual value is lodged with the commissioners sitting as a board of revision under the Act of July 27, 1842, P. L. 441, sec. 13. The presumption is that such jurisdiction was properly exercised and irregularities were corrected in this case. This conclusion is not invalidated by the opinion of a witness that, as finally revised, some properties are overvalued and others undervalued. That only raises questions which may be tried at the instance of the taxpayer affected, upon appeal from the action of the board of revision. As to three of the wards the presumption is that the assessments as returned were at not less than the actual value in accordance with the assessors oath of office.

6. Hence the evidence does not warrant the conclusion that in its entirety the assessment is illegal and void and that the defendant taxing authorities are without jurisdiction to levy and collect the taxes in question.

7. For whatever special injury either of the plaintiffs may have sustained in the premises he may have redress at law through his pending appeal.

8. Any supposed injury that may be common to all the taxables of the borough by reason of the failure of the assessors to act at all times as a board, would be of infinitely less consequence than the inconvenience to the defendants which would result from a decree annulling the assessment. It would, moreover, be impracticable to cause a new triennial assessment to be now made, because the assessors have gone out of office and been succeeded by others who can only make a triennial assessment in the last year of their term.

9. Therefore, because first, it cannot be said the assessment is void; second, the relief asked for would confer little if any benefit upon the plaintiffs, especially in comparison with the inconvenience the defendants would thereby suffer; third, the plaintiffs have a remedy at law; and, fourth, the impracti-

cability of getting a new assessment by the proper officers at this time, the injunction asked for should be refused and the bill dismissed at the plaintiffs' costs.

*Error assigned* was the decree of the court dismissing the bill.

*M. J. Martin*, with him *John G. McAskie*, for appellants.

*John P. Kelly*, with him *John J. Toohey*, county solicitor, *Clarence Balentine*, *Joseph O'Brien* and *William J. Fitzgerald*, for appellees.

PER CURIAM, March 16, 1908:

If the appellants were aggrieved by reason of the excessive valuation of their properties for taxation, the law furnished an adequate remedy by appeal to the county commissioners and to the court of common pleas. They had no standing in equity to raise that inquiry. The legality of the assessment was the only question properly involved. The failure of the appellants to sustain the allegation that the valuations had not been fixed by the assessors acting together as a board was conclusive of the controversy.

The decree is affirmed at the cost of the appellants for the reasons stated in the opinion of the learned judge of the common pleas.