# Rees, Appellant, *v.* City of Erie.

*Taxation—Assessment—City of the third class—Board of revision of taxes—City assessors—Ratio of value—Equalizing of assessments—Legal remedy—Equity.*

1. Under the provisions of Section 5, of Article 15, of the Act of May 23, 1889, P. L. 277, as amended by Section 3, of the Act of May 23, 1895, P. L. 118, the board of revision of taxes and appeals of a city of the third class has authority to revise and equalize the valuations returned by the board of city assessors for the purposes of correction and equalization, and further to alter the same, when in their opinion the valuations returned do not represent the fair market value at public sale after notice, and this without an appeal on the part of taxables from the action of the board of city assessors.

2. Where the entire assessment throughout the city has been

altered by the board of revision of taxes and appeals, and a new standard of valuation adopted, the rule that the board of revision must adopt the ratio of valuation established by the board of city assessors does not apply, particularly where it does not appear that the standard of valuation adopted is not uniform throughout the district.

3. In such a case if the board shall fail in any particular instance to secure uniformity, the remedy is by appeal to the Court of Common Pleas.

4. In such a case an assessment made by the board of revision of taxes and appeals arrived at by increasing the valuation certified by the board of city assessors for the purpose of equalizing or altering the same will not be set aside as a whole because the same ratio of value was not applied to land as to buildings and improvements.

5. A bill in equity to enjoin the councils and mayor of a city of the third class from levying or assessing city taxes, based on an assessment made and certified by the board of revision of taxes and appeals, was dismissed where all that appeared was that the board of revision, after due notice and without an appeal on the part of taxables, revised and equalized the valuation as returned by the board of city assessors for the purposes of correctness and equalization, and further altered the same, when in their opinion the valuation returned did not represent the fair market value at public sale after notice.

Argued Oct. 21, 1913. Appeal, No. 189, Jan. T., 1913, by plaintiffs, from decree of C. P. Erie Co., May T., 1913, No. 6, in equity dismissing bill in case of Davis Rees, W. B. Trask, Henry Herbst, E. F. Gifford, C. H. Kessler, Orr G. Metzner, N. Cohen, P. W. Dietly, J. F. Blass, Aaron Simon, Henry Zimmerley, R. P. Dailey, J. C. Williams, and B. B. Brown v. The City of Erie. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity by plaintiffs as taxpayers to restrain the City of Erie from levying the city taxes for 1913, based upon the triennial assessment made and certified to by the board of revision of taxes and appeals.

The following opinion was filed by BENSON, J.:

Bill in equity to restrain by injunction, the councils and mayor of the City of Erie from levying or assessing the city taxes for the year 1913, based on assessment made and certified to by the board of revision of taxes and appeals.

From the bill, answer, replication and testimony, we find the following facts, to-wit:

1. The City of Erie, defendant in this case, is a city of the third class of the Commonwealth of Pennsylvania, situated in the County of Erie and consisting of six wards, designated as follows: first, second, third, fourth, fifth and sixth wards.

2. That John Sullivan, Conrad Flickinger and Henry Kessler constitute the board of city assessors, authorized by law to prepare the triennial assessment of the taxable property of said city for city purposes for the year 1913.

3. That the valuation of the taxable property of the City of Erie, assessed and returned by the board of city assessors, and revised, equalized and altered by the board of revision of taxes and appeals, and by them certified to the councils of the City of Erie and being the assessment questioned in this case, is the regular triennial assessment for the year 1913.

4. That the city assessors began the work of preparing the triennial assessment for the year 1913, about April 15, 1912; and after visiting each piece of land, fixing the assessed valuation thereof, they wrote their valuation upon maps or plots prepared for that purpose, and served, as required by law, a printed notice of the amount of the assessment and the time and place for hearing appeals therefrom by the board of revision of taxes and appeals, and that said notices were served more than five days before said hearings.

5. The form or notice served by the board of assessors is practically in words and form as follows, to wit:

Mr. Jessie M. Dunn

You are assessed for 1913 in the 4th Ward as follows:

| No. of Tract of Lot | Amount of Land | Value of Land | Value of Buildings | Total Valuation |
|---|---|---|---|---|
| 222 W.7th St. 41¼x165 | 3135 | | | |
| House as improved | | | 3100 | 6235 |

C. G. B.

.......... Horses and Mules

.......... Cows

.......... Dogs

.......... Occupation

Total value for City Purposes          6235

A Court of Appeals will be held in the common council room, city hall, in Erie, on Tuesday, Dec. 31, 1912, at 2 o'clock p. m.

Conrad Flickinger,
John Sullivan,
Henry Kessler,
Assessors.

6. That A. Gunnison, W. H. Lander, W. D. Kinney, Anthony Geiger and Thomas Laird, on September 30, 1912, were elected by the select and common councils of the City of Erie to serve as the board of revision of taxes and appeals, and organized as such board October 1, 1912, by electing A. Gunnison, chairman.

7. That the plots or maps showing said assessment on taxable property of the Second Ward of the City of Erie were completed by the board of city assessors and delivered by said board to the board of revision of taxes and appeals on October 3, 1912, for the purpose of enabling said board of revision of taxes and appeals to revise, equalize and alter the said assessments as provided by law; that in the same manner and for the same purpose, the plots or maps showing the assessment of property in the Third Ward were delivered on October 7, 1912, for the Fourth Ward, October 18, 1912; for the

Fifth and Sixth Wards on November 22, 1912; and for the First Ward December 3, 1912.

8. That the members of said board of revision of taxes and appeals held informal meetings, of which due notice was given through the public press, in from two to four school houses or public halls in each ward, that said meetings in each ward were held at a time subsequent to the delivery of the assessment for that ward by the board of city assessors to the board of revision of taxes and appeals; and that said meetings were held for the purpose of securing information of the value of real estate in the various parts and districts in the City of Erie.

9. That such meetings were largely attended by property owners in the neighborhood in which they were held, and at such meetings, information as to the value of the property in that portion of the ward was obtained by members of the said board of revision of taxes and appeals from the opinions of property owners and others present, and in the discussions there held.

10. That in addition to the information received at said meetings, said board of revision of taxes and appeals or certain members thereof, visited the various properties in the city liable to taxation, and received further information from the owners, neighbors and others having knowledge of real estate valuations in the vicinity.

11. That after obtaining said information, as to properties which had been assessed, said board of revision of taxes and appeals proceeded to revise, equalize and alter the assessments as made by the board of city assessors by raising the valuations in some cases and reducing them in others, so as to make all conform as nearly as possible to the value of real estate at a fair public sale.

12. That the said board of revision of taxes and appeals increased the valuations of land, as returned by the board of city assessors, exclusive of buildings and improvements in varying amounts on ten thousand nine hundred five (10,905) taxables within the City of Erie.

13. That said board of revision of taxes and appeals reduced the valuations as returned by the board of city assessors by varying amounts on sixty-seven (67) taxables, the total amount of such reduction on the said sixty-seven taxables being seventy-seven thousand eight hundred twelve dollars ($77,812.00).

14. That the said board of revision of taxes and appeals left unchanged valuations as returned by the board of city assessors on land exclusive of buildings on sixty-nine (69) taxables in the City of Erie.

15. That by the revision, equalization and alteration of valuations as returned by the board of city assessors, the total valuations of all taxables within the City of Erie were raised from thirty-three million five hundred forty-two thousand eight hundred twenty-six dollars ($33,542,826.00) to forty-eight million three hundred eighty-nine thousand two hundred twenty-seven dollars ($48,389,227.00) by the board of revision of taxes and appeals, and the valuations making up the said last mentioned amount, was by the said board, copied by wards into duplicates for the use of the city as the lawful assessment for the purpose of city taxation.

16. That the said board of revision of taxes and appeals did not revise, equalize or alter the valuations placed upon the buildings and improvements upon land as made and returned by the board of city assessors, but certified them as made and returned by said board of city assessors.

17. That the board of revision of taxes and appeals after revising, equalizing and altering the valuations as returned by the board of city assessors, served upon each taxable whose valuation had been raised, a notice in words and form as follows:

BOARD OF REVISION OF TAXES AND APPPEAL.

Erie, Pa. 2—12—1913.

Jno. S. Rilling, 708 State St.                    Plot No. 11.

Your revised assessment on Land for 1913, is as follows:

| No. of Tract of Lot | Amt. of Land | Value of Land. |
| --- | --- | --- |
| 37 | 38 x 106 16-100 | 380 N W cor. of 12 & Brewster. |

There is no other change in your assessment as made by Board of City Assessors.

| Appeal day for.. Ward will be held in the Common Council Chamber, City Hall, on......1913, at 2 o'clock, P. M. | A. Gunnison, Wm. H. Lander, W. D. Kinney, Anthony Geiger, Thos. A. Laird, Board of Revision of Taxes and Appeal. |
| --- | --- |

18. That the notices as above set forth were served as required by the act of the assembly.

19. That the appeal days fixed by the board of revision of taxes and appeal, to-wit: February 20, 21, 24, 25, 26 and 28, 1913, were the only appeal days fixed by the board of revision of taxes and appeal for the hearing of appeals in regard to the triennial assessment of 1913.

20. That no appeals were taken by any of the taxables of the City of Erie from the valuations made and returned by the city assessors to the board of revision of taxes and appeals.

21. That said board of revision of taxes and appeals was in session at the time and place designated in said notice; that a separate day was fixed for hearing appeals from each ward; that all property owners were given an opportunity to be heard either verbally or in writing and that all appeals were considered and disposed of by said board.

22. That said assessments made by the city assessors were transcribed from the plots to books furnished for that purpose, duly certified by said city assessors, and said assessments were revised, equalized and altered by said board of revision of taxes and appeals and were

transcribed to the said books and duly certified by the said board of revision of taxes and appeals and the city clerk.

23. That the said board of revision of taxes and appeals at a regular meeting, a quorum being present, passed a resolution requiring all complaints, protests and appeals of taxpayers to be reduced to writing and refused to hear them orally.

24. That it is and has been the custom of the board of city assessors in returning assessments and valuations upon real estate, to make a distinction between land and buildings and improvements erected thereon, by returning a separate valuation for each and the form of notice used by the board of city assessors shows a separate valuation for both land and buildings and improvements together with the total valuation assessed on each piece of real estate with a description of buildings and improvements thereon.

### CONCLUSIONS OF LAW.

1. That the board of revision of taxes and appeals did not exceed their authority in revising and equalizing and altering the valuations returned by the board of city assessors for the triennial assessment for the year 1913.

2. That the assessment so corrected and returned by the board of revision of taxes and appeals constitutes the lawful assessment for the purpose of city taxation for the year 1913 until changed and altered as provided by the act of assembly.

3. That the returning of a higher percentage of value on land than in the actual cost of buildings and improvements does not necessarily offend against the provisions of Section 1, of Article 9, of the Constitution of Pennsylvania so as to render the assessment null and void.

4. Under the provisions of Section 5 of Article 15 of Act of May 23, 1889, P. L. 277, as amended by Section 3 of Act of May 23, 1895, P. L. 118, the board of revision of taxes and appeals of the City of Erie has authority

to revise and equalize the valuations returned by the board of city assessors for the purposes of correction and equalization, and further to alter the same, when in their opinion, the valuations returned do not represent the fair market value at public sale after notice, without an appeal on the part of taxables from the action of the board of city assessors.

5. That the notice served upon the taxables of the City of Erie by the board of city assessors and the board of revision of taxes and appeals sufficiently complied with the requirements of the act of assembly.

6. That the resolution passed by the board of revision of taxes and appeals, requiring that all appeals be reduced to writing was a reasonable regulation and within the scope of their authority.

7. That the bill should be dismissed at the cost of the plaintiffs.

DISCUSSION.

The plaintiffs contend:

1. That the board of revision of taxes and appeals have no power or authority to raise or lower the valuations returned by the assessors without an appeal on the part of the taxable.

2. That in revising, equalizing and altering the assessments or valuations returned by the board of city assessors, the board of revision of taxes and appeals must adopt the ratio established by the assessors.

3. That the assessment certified by the board of revision of taxes and appeals is void by reason of the provisions of Article IX, Section 1, of the Constitution of Pennsylvania.

1. In support of their contention that the board of revision of taxes and appeals have no power or authority to alter the assessments returned by the board of city assessors, without an appeal on the part of the party aggrieved, counsel for the plaintiffs cites Hodge v. Board of Appeals, 2 Law Times, 167. It was there held in de-

fining the powers of the board of revision and appeal created under the Act of March 18, 1875, P. L. 15, "The Act of 1875 creating this board provides 'for the purposes of appeal' the board may be appointed by councils. Hence if there is no appeal, the assessment stands as the true valuation made by competent authority. If, however, an appeal is entered by the person whose real estate is assessed, then jurisdiction attaches, and after a hearing, the decision made by the board is final unless appealed from as provided by law;......but if there is no appeal, then any act on the part of the board such as changing the assessments is void." This was undoubtedly true in that act which created the board of revision for the sole purpose of hearing appeals from the assessments made by the assessors, and it was so held by Judge HANDLEY, but does not govern this case.

Another authority relied upon by plaintiffs is Williamson's Est., 153 Pa. 508, which defines the powers of the board of revision, created by the provisions of the Act of March 14, 1865, P. L. 320, applicable to the City of Philadelphia, which provides that the board of revision "shall have the power to revise and equalize the assessments by raising or lowering the valuations either in individual cases or by wards."

In defining the powers of the board of revision under that act, Mr. Justice WILLIAMS says: "The powers of the board of revision extend only, according to the letter and spirit of the Act of 1865, to the work of revision. The objects of revision are two: The equalization of values and consequently of the burden of taxation, and the correction of errors, whether of omission or commission."

Evidently the Act of 1865 clothed the board of revision with the power of raising or lowering the assessment returned by the assessors for two purposes only, that of correction and equalization; but the Act of 1895 gives additional power and authority to the board of revision of taxes and appeals. Under this act they may in-

crease or reduce the assessment, not only for the purpose of revision and equalization, but also for the purpose of altering and changing the assessments; nor are they limited by the words of the act to any particular purpose in exercising their power and authority to alter the valuations returned, and as tending to show that they have authority to raise assessments on their own motion, the act provides that it shall be their duty to give five days' written or printed notice to every taxable of any increase or addition to the valuation assessed against him by the board of city assessors. We, therefore, hold that an appeal is not necessary in order to give the board of revision of taxes and appeals jurisdiction in revising, equalizing or altering the valuations by increasing or reducing the same.

2. The contention of plaintiffs that the board of revision of taxes and appeals must adopt the ratio of valuation established by the board of assessors applies only in case of appeals in individual cases to them from the assessment made by the assessors or for the purpose of equalizing the assessment of wards or parts of wards, in order to secure uniformity throughout the entire taxable district, and cause the burden of taxation to fall equally upon all taxables. But where, as in this case, the entire assessment throughout the city has been altered, and in most instances raised by the board of revision and a new standard of valuations adopted, we do not believe that the rules laid down in the case cited, by counsel for plaintiffs, apply, and certainly not where there is no evidence to show that the standard of valuation adopted is not uniform throughout the district. Uniformity of valuation for tax purposes is a mandate of the fundamental law of the State, and we think that under the Act of 1895, the board of revision of taxes and appeals is charged with the duty of so revising, equalizing or altering the assessments returned by the board of assessors as to accomplish that end. Nothing is shown in the evidence to show us that they have failed to do

their duty, and the basis or standard of valuations to be adopted by them for the purpose of securing uniformity lies in their good judgment.

There is no good reason why they should not, in a proper case, take as the standard of valuation, the higher ratio fixed by the assessors on certain property and increase the assessments on others in order to make all uniform, if in their opinion such action would secure more substantial justice to the municipality and the taxables.

In the case at bar, some assessments were left unchanged, others lowered and others raised, and in this we think they are acting within the scope of their authority.

They had the power to adopt any assessment of the assessors on any particular taxable for the standard of value and increase or reduce others so as to secure uniformity, and if they have failed in any case, the remedy is by appeal to the Court of Common Pleas as provided by law.

3. Nor do we think that the assessment should be set aside for the reason that the same ratio of value has not been applied to land as to buildings and improvements. Even if this were true, which can only be determined by the introduction of evidence covering each particular case, it would not be sufficient reason for setting aside the whole assessment. Such a difference would undoubtedly constitute a good ground for appeal under the provisions of the Constitution and the laws of the State, but would not render null and void the entire assessment. If this were true, very few assessments would be allowed to stand. It is a matter of common knowledge that land values are more fixed and stable than values of buildings and improvements. The latter very often fail to bring anywhere near their real value of cost of construction, while the former sell more readily at near their true value; and we are of the opinion that the assessors were not far from right when they fixed the value of build-

ings and improvements at forty per cent. of their esti-
mated cost.

*Error assigned,* among others, was in dismissing plain-
tiffs' bill.

*T. A. Lamb,* and *U. P. Rossiter,* of *Rossiter & Thomp-
son,* with them *John S. Rilling,* for appellants.

*John B. Brooks,* with him *C. H. English,* City Solici-
tor, and *Joseph M. Force,* for appellee.

PER CURIAM, January 5, 1914:

The decree dismissing the bill is affirmed for the rea-
sons stated in the findings and opinion of the learned
judge of the Common Pleas.