## Kessler et al. v. Erie City.

*Charles A. Mertens,* for plaintiffs; *J. B. Held,* City Solicitor, for defendant.

COPELAND, P. J., 10th judicial district, specially presiding, March 1, 1930.—

### Findings of fact.

1. The defendant, City of Erie, is a city of the third class.

2. The plaintiffs, C. H. Kessler, G. Daniel Baldwin, S. C. Ostrow, A. P. Weschler and B. Emerman, are owners of real estate in said city subject to the payment of local taxes.

3. The year 1927 was the year of triennial assessment of property in the City of Erie; the assessment was made by the duly qualified and acting assessor, and certified to the board of revision of taxes and appeals in December, 1927.

4. On April 24, 1928, the Board of Revision of Taxes and Appeals of the City of Erie, by unanimous vote, passed the following resolution:

"*Resolved,* That the City Assessor of the City of Erie, Pennsylvania, be and he is hereby ordered and directed to correct any and all errors which may have been made in making any triennial assessment, to revise, equalize and alter such unequal assessments, if any exist, in the City of Erie, in order to effect an equitable assessment of all properties by increasing or decreasing the valuation either in individual cases or by wards or parts of wards or the entire city."

5. Pursuant thereto, John Pokorski, the duly qualified and acting assessor of the City of Erie, revised the assessment of all properties within the city,

totaling approximately $8000. This revision resulted in his handing in a report to the board of revision of taxes and appeals changing the assessment of approximately 400 properties, many of the valuations being raised and some lowered.

6. In August, 1928, the changes in the 1927 assessment were reported by the assessor to the board of revision of taxes and appeals, and the 1927 assessment was thereafter revised, equalized and altered by that board.

7. The board of revision of taxes and appeals held public hearings—appeal meetings—during October and November, 1928, and all parties whose assessments were changed had legal notice thereof.

8. All the plaintiffs appeared at the appeal meetings, either in person or by attorney, and were heard.

9. The taxes for the City of Erie for the year 1929 are based upon the 1927 triennial assessment as revised, equalized and altered by the board of revision of taxes and appeals.

### Conclusions of law.

1. That the board of revision of taxes and appeals did not exceed its authority in revising, equalizing and altering during the year 1928 the 1927 triennial assessment made and certified by the city assessor.

2. That the resolution passed on April 24, 1928, by the board of revision of taxes and appeals, requiring the city assessor to correct, revise, equalize and alter the 1927 triennial assessment, was within the power and scope of its authority.

3. The report of the city assessor, made pursuant to the resolution of April 24, 1928, became the official act of the board of revision of taxes and appeals after it received the same and heard and passed upon the appeals.

4. That the bill should be dismissed at the cost of the plaintiffs.

### Opinion.

This matter comes before the court on a bill in equity and answers thereto. The plaintiffs, residents and taxpayers of the City of Erie, allege that by its action in fixing the valuation or assessments of property in the city upon which the 1929 taxes are laid, it has committed an illegal act. This is denied by the City of Erie, defendant. A reading of the pleadings gives us no information as to why the plaintiffs bring this action, as there is no averment that they or any other person is injured by the act complained of. The testimony, however, discloses that the valuation or assessment of the properties of plaintiffs was raised, and, consequently, their taxes for the year 1929 would be higher than they would have been if the board of revision of taxes and appeals had not taken this action. This is why they complain.

Numerous technical reasons have been advanced why plaintiffs' bill should be dismissed. Some of these reasons seem to us to have merit. We shall, however, pass them by and dispose of the matter on its merits.

A triennial assessment of property in the City of Erie, a city of the third class, was made in the year 1927 and certified in December of that year to the board of revision of taxes and appeals. The taxes for the year 1928 were laid and levied upon this assessment. This assessment, as a whole, did not meet with the approval of the board of revision of taxes and appeals. So on April 24, 1928, it passed the following resolution:

"*Resolved*, That the City Assessor of the City of Erie, Pennsylvania, be and he is hereby ordered and directed to correct any and all errors which may have been made in making the triennial assessment, to revise, equalize and alter such unequal assessments, if any exist, in the City of Erie, in order to

effect an equitable assessment of all properties by increasing or decreasing the valuation either in individual cases or by wards or parts of wards or the entire city."

The City Assessor, John Pokorski, aided by his assistants, pursuant to this resolution, thereafter went over the whole of the 1927 assessments, made corrections, alterations, revisions and equalizations, and reported the result of his labors to the board of revision of taxes and appeals in August, 1928.

A list of all the property affected by this change, giving the 1927 assessment, as it was originally certified, and the assessment as fixed for the taxes for the year 1929, and reflecting the gain or loss, is included in the testimony from pages 14 to 22, inclusive. We understand there are about 400 properties listed therein. Some of the valuations are lowered; most of them, however, are raised. The owners of all properties, the assessment of which was changed, were given an opportunity to be heard and public hearings were held by the board of revision of taxes and appeals at various times during October and November, 1928. The plaintiffs all appeared, either in person or by attorney, and were heard. The plaintiffs contend that this action of the board of revision of taxes and appeals was illegal and pray:

"First. That all assessments made by the City Assessor of the City of Erie, Pennsylvania, under and in pursuance of the resolution passed by the Board of Revision of Taxes and Appeals, on April 24, 1928, be declared illegal and void.

"Second. That the City of Erie be restrained from collecting any taxes on any assessment made by the City Assessor of the City of Erie, Pennsylvania, under and in pursuance of the resolution of the Board of Revision of Taxes and Appeals passed April 24, 1928.

"Third. Such other and equitable relief as to your Honorable Court may seem necessary."

This brings us to the real controversy. Did the board of revision of taxes and appeals have the right to alter, revise and equalize assessments in the year 1928, and if it had this right, was its procedure legal? The law governing the assessment of property in a third class city is found in the Act of June 27, 1913, art. xv, P. L. 568 (Clark Act). It will not be necessary for us for the purpose of this case to consider the whole of that article; section 14 thereof deals with the powers and duties of the board of revision of taxes and appeals. It is as follows:

"The mayor and council of each city of the third class shall constitute a board of revision of taxes and appeals. The said council acting as a board of revision may, *in any year other than a triennial year, if they shall deem a new assessment necessary, on or before the first day of May,* issue their precept to the city assessor requiring him to make out and return a full, just, and equal assessment of property within the city, or such parts thereof as the said board of revision may deem advisable; and they shall take and receive the triennial and yearly assessment as returned by the city assessor, and *shall have power and authority to revise, equalize, or alter such assessments, in any and every year, by increasing or reducing the valuation either in individual cases or by wards, or parts of wards, and to add to the assessment book, and to the duplicate thereof in the hands of the city treasurer,* any property or the occupation of any person subject to taxation omitted therefrom, and any real estate in such city which has been exempt from taxation, and has ceased to be occupied and used for the purpose or purposes which entitle it to such exemption, as taxable for the portion of the year commencing at the time when the right to exemption ceases, and such real estate shall thereupon

become subject to taxation, at the rate fixed for the year, for the proportionate part of the year during which it is not entitled to exemption; and it shall be their duty to rectify all errors, and, when deemed necessary, *they may require the attendance of the assessor and assistant assessors, or any of them, or other citizens, before them for examination on oath or affirmation, either singly or together;* and they shall hear and determine all appeals by taxpayers from the assessments made by the city assessor, at such time and place as they may prescribe, at least five days' printed or *written* notice of which shall be given. . . . The said board shall complete their labors, and the hearing and determination of all appeals, on or before the first day of December in each year; after which the assessment shall be copied, by wards, into duplicate for the use of the city; and the assessment, so corrected and copied, shall be and remain a lawful assessment for the purpose of city taxation until altered as provided by this act. *The decision of the board shall be subject to an appeal to the Court of Common Pleas wherein such city is situated, in accordance with the existing laws, whose decision shall be final, and if the appeal to the court shall be groundless, the appellant shall pay the costs of the appeal."*

Under this act, the board might do one of two things in a year other than a triennial assessment year. First, it might require the city assessor "to make out and return a full, just and equal assessment of property within the city, or such parts thereof as said board of revision of taxes and appeals may deem advisable;" or, second, it might "revise, equalize or alter such assessments in *any* and every year by increasing or reducing the valuation either in individual cases or by wards or parts of wards."

Let us turn to the resolution of April 24, 1928, for the purpose of ascertaining what was required. This resolution does not require a new assessment. It requires that a correction shall be made of *any errors in the triennial assessment,* and that unequal assessments therein be revised, equalized and altered, to the end that an equitable assessment of all properties be made by increasing or decreasing the valuation, either in individual cases or by wards or parts of wards or the entire city. The board did not require a new assessment, and the 1927 triennial assessment stands as the assessment in the City of Erie at the time the bill was filed.

The board had the power and authority during the year 1928 to revise, equalize and alter the 1927 triennial assessment. Having this right, what means might it use in carrying out the authority vested in it? The members of this board must secure information from some source in order to qualify them to perform their duty. The valuation of property for taxing purposes is not an easy matter. They should secure all the help within their power in order that they may deal justly and equitably. The act further states, "when deemed necessary, they [the board] may require the attendance of the assessor and assistant assessors, or any of them, or other citizens, before them for examination on oath or affirmation, either singly or together." The board believed that there were inequalities in the assessment. It wished the advice and experience of the city assessor in assisting it in revising, equalizing and altering the triennial assessment made by him. It had the authority to require him to make a new assessment, but it only requested his assistance in correcting, revising, equalizing and altering the assessment already made. It had the power and authority to call him before the board, swear him and hear his recommendations. This would probably have been a long and tedious procedure. It passed the resolution of April 24, 1928, and thereby requested him to submit his recommendations in writing. These recommendations are the subject of this controversy. The board thereafter acted upon these rec-

ommendations. It was not compelled to accept them, and it held hearings throughout the months of October and November for the purpose of listening to the objections of any person whose property valuation was affected by this recommendation. After these hearings, the triennial assessment of 1927 was revised, equalized and altered. The plaintiffs had a right to appeal to the Court of Common Pleas from the decision of the board in fixing the values of their properties. They have not done so. Instead, they have elected to attack the legality of the action of the board.

We believe the same principle is here involved as that found in the case of Rees *v.* The City of Erie, 243 Pa. 189, decided by the Supreme Court on Jan. 5, 1914. The Act of May 23, 1889, P. L. 277, as amended by section 3 of the Act of May 23, 1895, P. L. 118, at that time governed the acts of the board. That act, in so far as the powers of the board are concerned, is the same as the act now in force, viz., the board "shall have power and authority to revise, equalize or alter such assessments in *any* and every year by increasing or reducing the valuations, either in individual cases or by wards or parts of wards."

Benson, J., in the above case, in an opinion adopted by the Supreme Court, says in part:

"Evidently the Act of 1865 clothed the board of revision with the power of raising or lowering the assessment returned by the assessors for two purposes only, that of correction and equalization; but the Act of 1895 gives additional power and authority to the board of revision of taxes and appeals. Under this act they may increase or reduce the assessment, not only for the purpose of revision and equalization, but also for the purpose of altering and changing the assessments; nor are they limited by the words of the act to any particular purpose in exercising their power and authority to alter the valuations returned, and as tending to show that they have authority to raise assessments on their own motion, the act provides that it shall be their duty to give five days' written or printed notice to every taxable of any increase or addition to the valuation assessed against him by the board of city assessors. We, therefore, hold that an appeal is not necessary in order to give the board of revision of taxes and appeals jurisdiction in revising, equalizing or altering the valuations by increasing or reducing the same."

We adopt the following excerpt from the opinion of the court in the case of Rees *v.* City of Erie, *supra:*

"Uniformity of valuation for tax purposes is a mandate of the fundamental law of the State, and we think that, under the Act of 1895, the board of revision of taxes and appeals is charged with the duty of so revising, equalizing or altering the assessments returned by the board of assessors as to accomplish that end. Nothing is shown in the evidence to show us that they have failed to do their duty, and the basis or standard of valuations to be adopted by them for the purpose of securing uniformity lies in their good judgment.

"There is no good reason why they should not, in a proper case, take as the standard of valuation *the higher ratio fixed by the assessors* on certain property and increase the assessments on others in order to make all uniform, if in their opinion such action would secure more substantial justice to the municipality and the taxables.

"In the case at bar, some assessments were left unchanged, others lowered and others raised, and in this we think they are acting within the scope of their authority.

"They had the *power* to *adopt* any *assessment* of the *assessors* on any particular taxable for the standard of value and increase or reduce others *so as*

*to secure uniformity, and if they have failed in* any case, the *remedy is by appeal to the Court of Common Pleas,* as provided by law."

Equality in bearing the expense of government is always to be sought. The Act of 1895 and the Act of 1913 make provision for correcting errors in judgment not only in triennial years but in every year. A board of revision of taxes and appeals is provided. It learns that correction and equalization of the 1927 assessments are desirable. It proceeds to act. There is no method of procedure prescribed by law. It calls upon the city assessor for assistance. A change of some valuations is made; all parties affected are given an opportunity to be heard. The plaintiffs are heard. The board renders its decision, from which plaintiffs had a right to appeal if they were injured. They do not appeal, but attack the legality of the procedure. The plaintiffs do not allege either in their bill or in their testimony that injustice has been done them. They do not allege that the board failed to do its duty. They complain only because the city assessor took part in the altering, equalizing and revising of the taxes. The presumption of the law is that the board of the revision of taxes and appeals performed its duties: Clark *v.* Burschell, 220 Pa. 435.

We do not think plaintiffs' position is well taken, and accordingly order and decree as follows:

And now, March 1, 1930, after hearing and after argument of counsel, the bill of complaint is dismissed, at the cost of the plaintiffs.