[Civ. No. 5997.   Third Appellate District.—March 25, 1938.]

WILLIAM ROY WILLIAMSON, Respondent, v. H. A. PAYNE, Auditor, etc., et al., Appellants.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellants.

A. Moresby White for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment ordering and decreeing the cancellation of a certain assessment levied on property belonging to the plaintiff for the fiscal year 1935–1936. From this judgment the defendants appeal.

The allegations of the complaint are to the effect that the assessment referred to was illegal, discriminatory, confiscatory and fraudulent, and that the plaintiff was denied the right of appearing before the board of equalization to give testimony as to the value of the property assessed, and the reasons why the assessment should be reduced.

The record shows that the county board of equalization of the county of Los Angeles adopted rules governing the procedure of the board sitting as a board of equalization, one of the rules being to the effect that no reduction in the assessment of any property would be ordered unless the owner of

the property, if in the county and able to attend, attended before the board of equalization at the time appointed for the hearing of his application for a reduction of the assessment.

The court held that this rule was in violation of the provisions of section 3675 of the Political Code, and therefore, void, and the assessment involved in this action consequently invalid.

While the briefs in this case have taken a rather wide range, there are really but two questions involved, to wit:

1st. The validity of the rule adopted by the board of equalization requiring the presence of the owner of the property, if within the county and able to attend;

2d. Was the plaintiff in this case actually denied a hearing?

The record shows that on or about the 9th day of July, 1935, an application was made and filed pursuant to section 3674, *supra,* praying for the reduction of the assessment upon certain properties therein mentioned. The application is in the words and figures following, to wit:

"92——Supervisorial District No. 805.

"To the Honorable Board of Equalization of the County of Los Angeles, State of California, 1935.

"Your petitioner, William Roy Williamson, respectfully represents that he is the owner of the property hereinafter described and assessed on the assessment roll of the county of Los Angeles, for the year 1935, in the name of same; that the full cash value of said property is as stated below, and your petitioner therefore prays that the valuation on said property be reduced from the amount fixed by the assessor to the amount hereinafter stated as the full cash value of said property.

"Excessive, unequal, disproportionate and/or double assessment, as set forth in the affidavit and brief attached hereto and made a part hereof.

"WHEREFORE, your petitioner prays that reasonable notice of hearing on this application be given, and that the reduction be granted as prayed. Notice of hearing is hereby waived.

" (Sign here)

"William Roy Williamson
"By James O. Stevenson, Agt.
"Address of petitioner: 306 W. 3rd St.

"State of California,

"County of Los Angeles—ss.

"James O. Stevenson, Agt. for petitioner, being duly sworn, says: That he is the applicant in the foregoing application, that he has read the same and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated on information and belief, and as to those matters he believes it to be true.

" (Sign here)

JAMES O. STEVENSON.

"Subscribed and sworn to before me this 9 day of July, 1935.

"L. E. LAMPTON, County Clerk.
"By E. L. THORING, Deputy Clerk.

"N. B. No action will be taken upon this application unless presented in person by the applicant to the Board of Equalization.

"EXHIBIT 'A'

Petition No. -——

Petitioner: William Roy Williamson

Assessed to same.

Petitioner's Address: 501 S. Hoover Street.

| Vol. | Page | M.B. Ref. | Description | Assessed Value | Cash Value | Action Taken |
|---|---|---|---|---|---|---|
| 6 | 187 | 21 | Tract No. 4081 | | | |
| | | 39 | | | | |
| | | | Lot A. LAND | $13,680. | $3,035. | |
| (Seal) | | | IMPS. | 4,350. | 2,850. | " |

It will be observed that in connection with this application special attention is called to the fact that no action will be taken upon the application unless presented in person by the applicant to the board of equalization.

The court after finding that the assessment was regularly made, etc., specifically declined to make any finding as to whether the assessment was illegal, discriminatory, confiscatory or fraudulent, or whether it was made through error of judgment, or as required by law, or in the sound exercise of judgment by the assessor. The court likewise made no finding as to the full cash value or the equalized value of the property involved, nor did it make any finding as to whether the assessment should have been at the contrary figures men-

tioned in the plaintiff's complaint. The court then adopted the finding challenged herein, designated as Finding No. 111, which reads as follows:

"The plaintiff filed written and verified application for reduction of assessment as in paragraph V. of said complaint recited.

"Plaintiff's agent signed said application and appeared before the board to give evidence and argument in support thereof. Said board refused to receive said evidence or to hear said agent unless or until his principal, the plaintiff herein, owner of the property, if in the county and able to attend, should likewise be present before said board. Said refusal was pursuant to the rule of said board adopted July 1, 1935, providing as in said complaint alleged that no application for reduction of assessment would be heard if the showing in support thereof at said hearing was made by an agent of the owner, unless said owner was either absent from the county or unable to appear. That said agent was seasonably informed of said rule and of the requirement thereunder, and after receiving such information made reasonable efforts to advise the owner thereof, but after receiving such information was unable to contact the owner prior to the date set for the hearing and the continuances thereof. That plaintiff was not absent from the county or unable to appear before said board at said hearing. Said board was at all times ready and willing to hear said application and the plaintiff's agent in support thereof, and so informed said agent, when he should comply with said rule."

This finding specifically shows that the plaintiff was not absent from the county, or unable to attend before the board at the hearing of his application for a reduction of the assessment. It also shows that the agent of the plaintiff was seasonably informed of the rule of the board and the requirement thereunder that the owner of the property should be present at the hearing of his application. The reasonableness of the rule of the board of equalization requires little or no argument to support it. The purpose of adopting the rule is that the board of equalization may have before it the person who is financially interested in the property and in the assessment, and that full inquiry may be made as to the value of the property, its purchase price, if purchased, the extent of the improvements thereon, the cost of the improvements, the annual or monthly income derived therefrom, and such

other information as might enable the board of equalization to determine the exact appraisement of the property and the amount of the levy that should be placed thereon.

There is another valid reason, also, for the requirement of the property owners to be present and answer questions touching the assessments and levies made upon their properties. The board of equalization is entitled to first hand information, and likewise is entitled to adopt rules which will enable them to obtain such information without being overrun by agents or persons who engage in the practice of working up a clientele having for the object a reduction of assessments for a percentage of the amount of taxes saved to the owner or owners. In making this statement we do not mean to intimate that anything of this nature appears in the record in this case, but only to show the reasonableness of the rule and the advisability on the part of a board of equalization to make certain of the orderly procedure and conduct of its work in considering different assessments, values of property and equalizing the burdens to be imposed upon owners.

That the board of equalization of the county of Los Angeles had authority to adopt rules and regulations for the government of its body by section 9 of article XIII of the Constitution cannot be reasonably questioned. The portion of that section bearing upon this question reads as follows: "The boards of supervisors of the several counties of the state shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation, providing such state and county boards of equalization are hereby authorized and empowered under such rules of notice as the county boards may prescribe as to the county assessments."

Section 3673, *supra,* reads: "The board has power, after giving notice in such manner as it may by rule prescribe, to increase or lower any assessment contained in the assessment roll of the county or city and county so as to equalize the assessment of the property in the county or city and county," etc.

Section 3675, *supra,* to which we have referred, reads: "Before the board grants the application or makes any reduction applied for it must first examine an (on) oath the person or the agent making the application touching the value of the property of such person. No reduction must

be made unless such person or the agent making the application attends and answers all questions pertinent to the inquiry." The meaning of this section appears to have been misapprehended. It is in no sense a grant of any right, privilege, or immunity to a property owner. It is, in its language and literal meaning, a restriction only upon the power of the board of equalization to make a reduction without first having, upon oath, examined the owner of the property or an agent. It gives to the board, specifically, the right, and imposes upon the board the duty to examine either the owner or the agent, and does not in any particular restrict the power of the board as to whether the board will examine the owner or the agent. It is entirely optional, we repeat, as to which person the board of equalization will examine. It leaves the board of equalization free to examine the person from whom, in its judgment, it can best obtain direct and trustworthy information as to every factor bearing upon the value of the property, and the reasonableness and fairness of the assessment levied thereon.

We find nothing in section 3675, *supra,* which is prohibitive in its language or intent, that would restrict the board of supervisors adopting a rule as to the requirements of the owners to be present, if within the county and able to attend to give testimony touching their property. Nor is there anything in the rule which limits the right of the owner to be heard. In fact and in truth it directs that he shall be heard, and gives him notice that the board intends that he shall be heard before taking action upon his application for a reduction of the assessment levied upon his property.

Instead of being violative of any of the provisions of section 3675, *supra,* the rule of the board is really an aid of the statutory requirement, and not in derogation thereof. The manner of giving notice is not material, and any informality therein does not affect the validity of the assessment. Section 3885, *supra,* reads: "No assessment or act relating to assessment or collection of taxes is illegal on account of the informality," etc. Sections 4041 and 4041.1, *supra,* empower boards of supervisors to adopt rules and regulations for the government and conduct of their business.

While the appellant presents a rather extensive list of authorities to the effect that a board of supervisors, sitting *ex officio* as a county board of equalization, is a *quasi*-judicial

body under the recent decisions holding that judicial powers are vested only in courts, under the constitutional provision, we think that whether a county board of equalization is a *quasi*-judicial body or only a ministerial or administrative body, the right to make rules of the government of its business is fully authorized by law, and is amply supported by what we have heretofore said.

As an example of some of the rules that have been upheld we may cite the following:

In *Rees* v. *City of Erie,* 243 Pa. 189 [90 Atl. 58], it was held that a board of equalization had the power to pass a. resolution requiring that all complaints, protests, etc., should be reduced to writing, and would not be heard orally; that such a rule was a reasonable regulation. The same ruling was had in the case of *Pardee* v. *Schuylkill County et al.,* 276 Pa. 246 [120 Atl. 139].

We have heretofore referred to section 4041.1, *supra,* as to the powers of the board of supervisors to make rules. That section, so far as pertinent here, reads as follows: ''Under such limitations and restrictions as are prescribed by law, and in addition to jurisdiction and powers otherwise conferred, the Boards of Supervisors in their respective counties shall have the jurisdiction and powers to make and enforce such rules and regulations for the government of their body, the preservation of order, etc., as may be necessary.''

Section 3673, *supra,* contains the following language: ''The Board has power, after giving notice in such manner as it may by rule prescribe, to increase or lower any assessment.'' The board is likewise given power by further provisions of the Political Code to subpoena witnesses.

Other cases might be cited, but what we have set forth herein appears to us to amply support the powers of a board of equalization to make rules and regulations for the government of its business, including the requirement of owners of property to be present at the time their application for reduction of an assessment is being heard. That a board of equalization and a board of county supervisors are distinct identities does not, we think, limit any reasonable rule-making power.

The finding of the court, as we have set forth, shows that the board was at all times willing and ready to hear the application of the plaintiff's agent in support thereof, and

so informed said agent when the plaintiff should comply with the rule. It further shows that the plaintiff was not absent from the county, and was not unable to appear before the board, which answers conclusively all the argument of the respondent as to the right of the plaintiff to appear and be heard.

We do not deem it necessary to review a single authority cited by the respondent as to the right of a property owner to a hearing. We think every case cited by the respondent supporting the right of a property owner to be heard states a true and correct rule, but that question is not really in issue in this case, in view of the finding of the court and in view of the owner's failure to appear and avail himself of the opportunity to be heard upon all questions touching the value of his property and the fairness of the assessment levied thereon.

It being apparent that the owner of the property was not denied a hearing or the right to be heard, and the rule in question requiring owners to be present if within the county and able to attend, not involving the impairment of any legal or constitutional right, it necessarily results that the judgment of the court based exclusively upon the theory that the rule of the board of equalization involved herein is void in contravention of section 3675, *supra,* must be, and the same is hereby reversed.

Pullen, P. J., and Thompson, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 23, 1938.