[No. A046292. First Dist., Div. Four. Jan. 22, 1991.]

FLETCHER BENTON et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF NAPA COUNTY et al.,
Defendants and Respondents;
WHITBREAD OF CALIFORNIA, INC., Real Party in Interest and
Respondent.

1468

---

## COUNSEL

Fershko & Lewis and Victor A. Fershko for Plaintiffs and Appellants.

Robert Westmeyer, County Counsel, for Defendants and Respondents.

Miller, Starr & Regalia, John G. Sprankling and Kathy Green Miller for Real Party in Interest and Respondent.

---

## OPINION

**REARDON, J.—** Real party in interest Whitbread of California, Inc., sought Napa County approval for a winery on its property. Respondents Napa County and its board of supervisors adopted a mitigated negative declaration[1] pursuant to the California Environmental Quality Act (CEQA). Appellants Fletcher and Roberta Benton and others sought a writ of administrative mandate to compel the county and the board to require preparation of an environmental impact report (EIR).[2] The trial court denied the petition. The Bentons appeal, contending that CEQA requires an EIR on this project. We affirm the judgment.

---

[1] A "negative declaration" is a written statement briefly describing the reasons a proposed project will not have a significant effect on the environment and does not require the preparation of an environmental impact report. (Pub. Resources Code, § 21064.) A "mitigated negative declaration" is one that includes mitigation measures to avoid potentially significant environmental effects. (See Cal. Code Regs., tit. 14, § 15071, subd. (e); see also Cal. Code Regs., tit. 14, § 15070, subd. (b)(1).)

All subsequent statutory references are to the Public Resources Code unless otherwise indicated.

[2] An "environmental impact report" is a detailed informational document setting forth such matters as the significant environmental effects of a proposed project, any significant environmental effects which cannot be avoided if the project is implemented, mitigation measures proposed to minimize the significant environmental effects, and alternatives to the proposed project. (Pub. Resources Code, §§ 21061, 21100, 21100.1.)

## I. FACTS

In May 1986, respondent Napa County issued a use permit to real party in interest Whitbread of California, Inc., allowing it to construct a 450,000-gallon-per-year winery on an 856-acre parcel.[3] The county issued a mitigated negative declaration in connection with the project. This negative declaration was never subjected to legal attack.

By February 1987, Whitbread had acquired an adjoining 120-acre parcel and applied for another use permit, seeking to relocate the winery on the enlarged site. The new plan relocated and reduced the size of winery buildings, added underground storage caves and altered access routes. Under the new proposal, the winery buildings were to be built one mile west of the original site and one-half mile from Soda Canyon Road—closer to existing residences than under the original plan. County planners proposed another mitigated negative declaration for the project. By the summer of 1987, building permits had issued and Whitbread had begun construction at the original winery site.[4] County counsel advised the planning commission to base its CEQA decision on a comparison between what Whitbread could construct under its existing permit and what it requested in the new application. The commission conducted a public hearing, approved grading and use permits and adopted a mitigated negative declaration. One condition of the new permit was that the original permit would become null and void once construction began at the relocated winery site.

Appellants Fletcher and Roberta Benton and Joseph and Mary Schreuder have residences on Soda Canyon Road near the Whitbread property. They appealed the planning commission's decision to respondent Napa County Board of Supervisors. On the advice of counsel, the board evaluated the environmental impact of the project based on the difference between the original winery and the relocated one. In September 1987, after another public hearing, the board approved the new use permit, denied the appeal and adopted a mitigated negative declaration. Again, one condition of the

---

[3] The site is zoned for agricultural uses. Growing vines is a permitted use without a use permit, but a use permit is necessary in order to build a winery on this site. (Napa County Code, tit. XII, §§ 12019(a), 12231(a), 12232(c).)

[4] In its brief, Whitbread details its construction and operation of the winery under the original permit. While the fact of construction and operation of the original winery is a part of the administrative record, much of Whitbread's evidence of the extent of this construction and operation comes from a declaration which it sought to bring before this court on a motion for production of additional evidence. As that motion was denied, this declaration is not properly before us; we have effectively stricken all references to it. For the same reason, Whitbread's description of its relocation of the original winery to the new site has likewise been disregarded.

new permit was that the original permit was null and void once Whitbread exercised its rights under the new permit.[5]

In October 1987, the Bentons and the Schreuders[6] filed a timely petition for a writ of administrative mandate in the trial court. They sought to compel the county and the board to set aside the new use permit and to require preparation of an EIR.[7] (See Code Civ. Proc., § 1094.5.) The petition was denied and this appeal followed.

## II. DISCUSSION

 The Bentons contend that CEQA requires that an EIR be prepared on this project. They argue that the county erred by considering only the environmental impacts of the relocation of the winery. They contend that CEQA requires that the county and the board determine the environmental impacts of the second winery proposal as if the original plan had not already been approved.

### A. *Exhaustion of Administrative Remedies*

 As a preliminary matter, Whitbread contends that we need not reach the merits of the appeal. It argues that the Bentons failed to exhaust their administrative remedies because they did not petition the board for reconsideration of its decision denying their appeal of the planning commission's action. The trial court rejected this argument, finding that, given the full evidentiary hearings and arguments presented to the commission and the board, a request for reconsideration before the board would not have resulted in a different decision.

We also reject this contention, for two reasons. First, in 1987, county ordinances and Napa County CEQA guidelines did not authorize the board

---

[5] A condition of the new use permit provided that the original use permit became null and void once Whitbread had constructed the building foundation and had been issued a building permit for the winery as proposed in the new use permit. After litigation began, the county modified this condition to provide that the original use permit would become null and void if these two requirements were met *and* if the litigation were finally resolved in Whitbread's favor. Fletcher Benton and Joseph Schreuder petitioned for a writ of mandate to declare the original permit had expired. The trial court denied the petition, finding that the board had the authority to grant an extension of the use permit and to toll the running of the permit during the pendency of the lawsuit that forms the basis of this appeal. Benton and Schreuder have appealed this ruling (case No. A048905).█

[6] Edmund and Jeannette Sawyer were also named as petitioners in the pleading. Only the Bentons and the Schreuders have appealed the trial court judgment. For convenience, all four appellants will be referred to as "the Bentons."

[7] The petition also alleged causes of action for injunctive and declaratory relief. These causes of action were dismissed by stipulation.

to reconsider a CEQA decision. At that time, aggrieved persons could move for reconsideration of the board's decision on appeal in *permit* matters. (Former Napa County Code, tit. XIII, §§ 13500(a), 13512.) However, such motions for reconsideration could not be made to challenge the board's *CEQA actions. (Id.,* § 13500(c).) The county's CEQA guidelines provided that the board's CEQA decisions were final and that no requests for reconsideration would be granted. (Napa County CEQA guidelines, § 1207, subd. (a).)

Second, even if we assume arguendo that the board had the authority to reconsider its adoption of the mitigated negative declaration, we are satisfied that the Bentons exhausted their administrative remedies. At one time, the California Supreme Court required an aggrieved person to apply to the administrative body for a rehearing after a final decision had been issued in order to exhaust administrative remedies. (*Alexander* v. *State Personnel Bd.* (1943) 22 Cal.2d 198, 199-201 [137 P.2d 433]; see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 266.) This holding—criticized by at least one legal scholar as "extreme"—has been repealed by statute. (Gov. Code, § 11523 [Administrative Procedure Act cases]; see 3 Witkin, Cal. Procedure, *supra,* § 234, p. 266.) Therefore, we are not bound by it. The Bentons complied with the exhaustion requirement when they filed a timely appeal of the commission's decision to the board and argued their position before that body. (See *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) 34 Cal.3d 412, 418 [194 Cal.Rptr. 357, 668 P.2d 664] [failure to exhaust administrative remedies when plaintiffs received notice of administrative hearings, were advised of appeal requirements and failed to file timely appeal]; see also § 21177, subd. (b) [action may not be maintained unless one objected to approval of project orally or in writing].)[8]

B. *Scope of Project*

■ Much of this dispute centers on the proper scope of the project before the board—whether it was a new winery or a modified version of the winery that had already been approved. The trial court held that the board treated the application for the second use permit as a new application rather than a modification of the original permit, because the board required Whitbread to obtain a new use permit. However, having read the administrative record ourselves, we have come to a different conclusion.

The board did approve a new permit rather than a formal modification of Whitbread's original permit. However, to consider this fact alone as deter-

---

[8] In light of this ruling, we need not determine whether the trial court correctly ruled that the county ordinance requiring a petition for rehearing to be filed within 30 days of the board's action could conflict with the 30-day limitations period for filing a court action challenging the board's action under CEQA.

minative of the scope of the project for purposes of CEQA review would constitute a triumph of form over substance. A few days before the trial court issued its explanation of its ruling in our case, another appellate court faced a similar question. In that case, a final EIR had been certified and a use permit had been issued on a project. Six years later, after the use permit had expired, the real party in interest filed for a new use permit. The new application called for a revised version of the previously approved project. The revised plan requested an increase in the number and height of buildings and the relocation of certain buildings from one part of the site to another, among other changes. The county planning commission approved the new use permit without requiring a subsequent or supplemental EIR (see § 21166), relying on the earlier EIR and an addendum to it prepared for the new use permit application. The county board of supervisors denied an appeal of the planning commission's decision and the trial court denied a petition for writ of mandate. The appellate court ruled that the county, by its actions, had treated the new use permit as a modification of the earlier project, rather than a new project for purposes of CEQA. (See *Fund for Environmental Defense* v. *County of Orange* (1988) 204 Cal.App.3d 1538, 1542-1548 [252 Cal.Rptr. 79].) If this analysis is correct for a case in which the original use permit was never exercised and had actually expired, then—a fortiori—it should apply to a case such as ours in which the initial permit had been exercised and rights under the permit had vested.

Applying this analysis to the Whitbread proceedings, the administrative record demonstrates that the commission and board consistently treated the new application as if it were a request for modification of the already permitted project. Apparently, the staff treated the application as one for a new permit. However, county staffers explained to the planning commission at its hearing that Whitbread had already acquired vested rights to build under its initial use permit. County counsel advised the commission to review the project before them in a limited way, by comparing what had already been approved with what was being proposed. The commission appears to have followed these instructions. It identified the use permit as one for relocation of the original winery.

At the board of supervisors' hearing on the Bentons' appeal, county counsel explained that denial of the second use permit would only prohibit Whitbread from *moving* the winery; it would not prohibit the applicant from building the existing winery as previously approved. Whitbread noted that its rights had vested under the original permit; the first phase of construction had begun. County counsel also explained that Whitbread's rights under the initial permit had vested, precluding a reevaluation of the previous environmental review. First, the board rejected the Bentons' ap-

peal, to the extent that they sought to challenge the initial permits. Then, it heard testimony on the merits of the relocation of the winery alone. The board chair cautioned that the testimony presented should be about the difference between the impacts of the two wineries, not about whether there should be a winery at all. County counsel repeated this advice, although the Bentons' counsel disagreed with it and urged the board to treat the project as a new winery. The supervisors' comments indicated that they followed the advice of their counsel. Whitbread, county counsel and the chair of the board of supervisors referred to the project as a relocation of the existing winery.[9] On this record, we are satisfied that the project before the board was a modification of the existing winery project, not an entirely new project.[10]

## C. *Rule 15162*

■■■ Next, the Bentons argue that rule 15162 of the CEQA guidelines cannot lawfully be applied to this case. (See Cal. Code Regs., tit. 14, § 15162; hereafter rule 15162.) They contend that this rule is invalid insofar as it applies to negative declaration cases such as the one before us. Section 21166—the statutory authority for this rule—makes no reference to the modification of projects that initially resulted in the issuance of a negative declaration. Therefore, the Bentons reason, the challenged portion of rule

---

[9] We note that Whitbread did agree to treat the revised application as a new project *for purposes of CEQA and permit processing deadlines.* However, this does not constitute an agreement to treat the application as a new project for any other purpose.

[10] In support of their argument that the board's limited scope of CEQA review was improper, the Bentons note several cases in which "courts have required agencies to measure projects against the physical environment which actually exists rather than an environment hypothetically permitted under existing plans." (See *Christward Ministry* v. *Superior Court* (1986) 184 Cal.App.3d 180, 186-187, 190 [228 Cal.Rptr. 868] [general plan amendment]; *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1986) 183 Cal.App.3d 229, 246 [227 Cal.Rptr. 899] [rezoning]; *Environmental Planning & Information Council* v. *County of El Dorado* (1982) 131 Cal.App.3d 350, 352-354 [182 Cal.Rptr. 317] [general plan amendment].) However, these cases are distinguishable from our case. In none of the cited cases had the projects in question undergone an earlier, final CEQA review. None involved permits that had already been issued or rights that had vested by the time the board made its decision. These cases do not involve the modification of an earlier permit which had become final, and on which CEQA review had been completed. In our case, the actual physical environment includes that which Whitbread has a legal right to build under permits which have already been issued and on which construction has already begun. As the Bentons' cases are factually distinguishable, they do not apply to our case.

The Bentons also argue that to find that this project was limited in scope will encourage developers to "chop" a large project into many little ones, which may have cumulative environmental consequences. Again, we disagree. There is no suggestion that Whitbread brought its winery proposals in phases in order to avoid full CEQA review. Its initial project received full CEQA review; only those aspects of the proposal that were changed as a result of the modified winery plan were subject to later CEQA review.

15162 applying to this situation is void as a regulation promulgated in excess of statutory authority.

The validity of rule 15162 in the context of a case in which an initial negative declaration was issued appears to be one of first impression. The Bentons have the burden of proof on this issue. ■ One who attacks an administrative regulation has the burden of showing that it is unreasonable. The regulation comes before us with a presumption of correctness and regularity, placing the burden of demonstrating invalidity on the one attacking it. (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993]; *Tahoe-Sierra Preservation Council* v. *State Water Resources Control Bd.* (1989) 210 Cal.App.3d 1421, 1439 [259 Cal.Rptr. 132].)

■ According to the challenged regulation, when an EIR or a negative declaration has been prepared, no additional EIR need be prepared except in three circumstances: if subsequent changes are proposed which will require important revisions of the previous EIR or negative declaration due to the involvement of new significant environmental impacts not considered in the previous EIR or negative declaration, if substantial changes occur with respect to the circumstances under which the project is undertaken which will require important revisions of the previous EIR or negative declaration due to the involvement of new significant environmental impacts not covered in the previous EIR or negative declaration, or if new information of substantial importance to the project becomes available. (Cal. Code Regs., tit. 14, § 15162, subd. (a).)

Rule 15162 was promulgated pursuant to section 21166. This statute provides that when an EIR has been prepared for a project pursuant to CEQA, no subsequent or supplemental EIR shall be required by the lead agency, unless substantial changes are proposed in the project which will require major revisions of the EIR, substantial changes occur with respect to the conditions under which the project is being undertaken which will require major revisions in the EIR, or new information—which was not known and could not have been known at the time the EIR was certified as complete—becomes available. (§ 21166; see *Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1073 [230 Cal.Rptr. 413].) As the Bentons point out, this statute does not purport to apply to cases in which the initial environmental document was a negative declaration rather than an EIR. (See § 21166.) However, this conclusion does not end our inquiry.

■ CEQA guidelines are binding on all public agencies. A board's failure to comply with a valid CEQA guideline may constitute an abuse of

discretion justifying the issuance of a writ of mandate. (See *San Franciscans for Reasonable Growth* v. *City and County of San Francisco* (1989) 209 Cal.App.3d 1502, 1512-1513 [258 Cal.Rptr. 267]; see also § 21168.) Although the California Supreme Court has not decided whether these guidelines are regulatory mandates or merely aids to interpreting CEQA, courts have been admonished to afford great weight to them unless a provision is clearly unauthorized or erroneous under CEQA. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278].)

■ We must determine if rule 15162, as applied to negative declaration cases, is void. ■ A regulation is void if it was promulgated in excess of statutory authority. (*Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 387 [216 Cal.Rptr. 733, 703 P.2d 73]; see *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 391 [211 Cal.Rptr. 758, 696 P.2d 150].) ■ To the extent that a CEQA guideline is inconsistent with or purports to alter its enabling statute, it must yield to the authority from which it flows. (*Bowman* v. *City of Petaluma, supra*, 185 Cal.App.3d at p. 1081.) ■ In determining whether a specific administrative rule falls within the coverage of the delegated power, our sole function is to decide whether the promulgating agency reasonably interpreted the legislative mandate. In doing so, we may not substitute our independent judgment for that of the administrative agency on the facts or the policy considerations involved. Under this standard of review, we must determine whether the agency reasonably interpreted its legislative mandate when deciding that the challenged regulation was necessary to accomplish the purpose of the statute. Stated another way, our role is limited to determining whether the regulation is reasonably designed to aid a statutory objective. (*Credit Ins. Gen. Agents Assn.* v. *Payne, supra*, 16 Cal.3d at p. 657.)

■ Our reading of rule 15162 and section 21166 convinces us that the rule does not exceed its statutory authority. ■ A regulation will not be invalidated unless it is arbitrary, capricious or patently unreasonable. (*Sternoff* v. *State Bd. of Equalization* (1980) 103 Cal.App.3d 828, 834 [164 Cal.Rptr. 715].) ■ An administrative agency may adopt supplementary regulations if the provisions reasonably relate to the purposes of the act. (See *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 506 [191 Cal.Rptr. 140] [Subdivision Map Act case].) ■ The negative declaration provisions of rule 15162 satisfy the same purpose as the portions of rule 15162—and section 21166, its enabling statute—that apply to EIR's. In a case in which an initial EIR has been certified, section 21166 comes into play precisely because in-depth review of the project has already occurred,

the time for challenging the sufficiency of the original CEQA document has long since expired, and the question before the agency is whether circumstances have changed enough to justify repeating a substantial portion of the process. (See *Fund for Environmental Defense* v. *County of Orange, supra,* 204 Cal.App.3d at p. 1544 [EIR case]; *Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1073 [EIR case].) These same principles apply with even greater force in a case such as this, in which the initial environmental review resulted in the issuance of a negative declaration, rather than an EIR. If a limited review of a modified project is proper when the initial environmental document was an EIR, it stands to reason that no greater review should be required of a project that initially raised so few environmental questions that an EIR was *not* required, but a negative declaration was found to satisfy the environmental review requirements of CEQA. To interpret CEQA as requiring a greater level of review for a modification of a project on which a negative declaration has been adopted and a lesser degree of review of a modified project on which an EIR was initially required would be absurd.

 When construing a regulation, a court may look to the general principles and policies underlying the statutory scheme, as well as to the language of the statute itself. (*Miller* v. *Woods* (1983) 148 Cal.App.3d 862, 876-877 [196 Cal.Rptr. 69].) Applying rule 15162 in cases in which the initial environmental review resulted in a negative declaration furthers CEQA goals. For example, it is the Legislature's declared policy that public comments on the environmental review of projects shall be made to the agency as soon as possible in the review of EIR's—including negative declarations—in order to allow the agency to identify, at the earliest possible time in the environmental review process, potential significant effects of a project, alternatives, and mitigation measures which would substantially reduce the effects. (§ 21003.1, subd. (a).) Rule 15162 furthers the Legislature's stated policy by encouraging the environmental review of a project at the earliest possible time, rather than requiring review of the entire project again when modifications to it must be approved by local planning bodies.

 An administrative agency may not, under the guise of rulemaking, abridge or enlarge its authority or exceed the powers given to it by the statute—the source of its power. (*Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 302-303 [140 P.2d 657, 147 A.L.R. 1028]; see *Credit Ins. Gen. Agents Assn.* v. *Payne, supra,* 16 Cal.3d at p. 656.) Courts must strike down a regulation that attempts to add or subtract from the statute. (*County of L. A.* v. *State Dept. Pub. Health* (1958) 158 Cal.App.2d 425, 438 [322 P.2d 968].) However, a regulation that fulfills the purpose of the law is not an addition to the underlying statute. (See 2 Cal.Jur.3d, Administrative

Law, § 133, p. 355; see also *Cal. Drive-in Restaurant Assn.* v. *Clark, supra,* at p. 294.) Having considered this matter carefully, we are satisfied that rule 15162 promotes the purposes of section 21166, rather than violating the intent of the statute. (See *Williamson* v. *Payne* (1938) 25 Cal.App.2d 497, 503 [77 P.2d 900].) Therefore, we find that rule 15162 is valid when applied to cases in which an initial negative declaration was adopted.

D. *Standard of Review*

 The parties also disagree about the standard of review to be applied when we evaluate this project. The Bentons urge us to apply the "fair argument" test: whether there is substantial evidence in support of a "fair argument" of potential environmental impact. This is the usual standard of judicial review of a board decision to adopt a negative declaration. Under this test, if there was substantial evidence that the proposed project might have a significant environmental impact, evidence to the contrary is not sufficient to support a decision to dispense with preparation of an EIR and adopt a negative declaration, because it could be fairly argued that the project might have a significant environmental impact. (*Citizen Action to Serve All Students* v. *Thornley* (1990) 222 Cal.App.3d 748, 754 [272 Cal.Rptr. 83]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988, 1002 [165 Cal.Rptr. 514].) The trial court applied this test.

 While Whitbread assumes that the fair argument test applies, Napa County argues that the substantial evidence test should apply instead. This is the usual standard of review for reviewing a decision whether to prepare a supplemental or subsequent EIR pursuant to section 21166. Under this test, courts determine whether the record as a whole contains substantial evidence to support the agency's determination that the changes in the project were not so substantial as to require major modification of the EIR. (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1075; see *Fund for Environmental Defense* v. *County of Orange, supra,* 204 Cal.App.3d at p. 1544; see also § 21166.)

 We are persuaded that the substantial evidence test should apply when a court must evaluate whether a board properly issued a second negative declaration on a project pursuant to rule 15162. We recently held that the substantial evidence test applied in a similar case in which section 21166 was applied. (See *Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1075.) Rule 15162 was promulgated pursuant to section 21166. The only difference between the two cases is that the initial environmental document in *Bowman* was an EIR, while the Whitbread winery

project originally received a negative declaration. The application of rule 15162 when a project proponent seeks to modify a project that originally received a negative declaration parallels the application of section 21166 and rule 15162 when a project proponent seeks to modify a project on which an EIR has already been certified. Therefore, the same standard of review should apply in both situations.

E. *Substantial Evidence*

 Finally, we must apply the substantial evidence test to the Whitbread modification itself. We must decide whether, in light of the whole record, there is any substantial evidence to support the board's decision to issue a mitigated negative declaration. (See *Bowman* v. *City of Petaluma, supra*, 185 Cal.App.3d at pp. 1071-1072; see also *Fund for Environmental Defense* v. *County of Orange, supra*, 204 Cal.App.3d at p. 1545.) Initially, the Bentons contend that all impacts of the larger project—even those already approved as part of the initial CEQA review process—must again be considered. Their arguments might be persuasive if the project under review by the board had been the original winery. But the original winery was not before the board when it issued this mitigated negative declaration; it had already survived environmental review. The only item subject to board approval was modification of the original permit to allow relocation of the winery building on the enlarged site. (See *City of Ukiah* v. *County of Mendocino* (1987) 196 Cal.App.3d 47, 53 [241 Cal.Rptr. 585].) Therefore, we must evaluate the board's environmental review of the modification.

The Bentons also argue that an EIR was required even if the board properly considered only the impacts of the winery relocation. In their opening brief, they argue that only one potential impact—noise—merits preparation of an EIR.[11] Under rule 15162, the board's adoption of the negative declaration was proper unless there is substantial evidence that one of its three conditions applies. An EIR is required only if (1) subsequent changes were proposed which required important revisions of the previous negative declaration because of new significant environmental impacts not considered in the initial negative declaration, (2) substantial changes will occur with respect to the circumstances under which the project is to be undertaken requiring

---

[11] In their closing brief, the Bentons also argue that potential traffic, water and visual impacts also merit preparation of an EIR. It is unfair to raise these issues for the first time on appeal in a reply brief, as this practice denies the respondents an opportunity to respond to such an issue. As such, we will not address this issue. (See, e.g., *Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 329, fn. 5 [248 Cal.Rptr. 704].)

important revisions of the initial negative declaration because of new significant environmental impacts not covered in the previous negative declaration, or (3) new information of substantial importance to the project became available. (Cal. Code Regs., tit. 14, § 15162, subd. (a).)

The Bentons did not demonstrate that any of these three factors existed in this case. The environmental impacts of the modification were not significant and no new information of substantial importance was brought out at the board hearing. A Whitbread expert testified that the function of the two wineries was identical. Although the Bentons' expert testified that the new winery would result in more noise than the original winery would, a significant part of his concern was based on the level of construction noise. The board did not consider construction phase noise impacts, as they were temporary. Even so, the Bentons' expert proposed several noise and traffic impact mitigations, suggesting that the operational impacts could be mitigated, and impliedly, that an EIR was not necessary. This is consistent with the Whitbread expert's conclusion that at the residence nearest the relocated winery site, typical average noise levels would increase by not more than two decibels—an increase that would be imperceptible to the human ear. By the board's adoption of the mitigated negative declaration and denial of the Bentons' appeal, it impliedly agreed with this conclusion.

The Bentons contend that there is conflicting evidence about the noise impacts of the relocation of the winery. ▮▮▮▮ However, the evidence before the board that there was little or no noise impact from the relocation of the winery constitutes substantial evidence to support the board's decision. (See *Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d at p. 1075.)[12]

### III. CONCLUSION

In summary, we hold that the proposal to relocate the existing winery was a modification of its existing project, not a new project. Whitbread had already obtained final CEQA approval on its original winery proposal; its right to build the original winery had vested by the time the board acted on the request for modification. Rule 15162 of the CEQA guidelines applies to this case, even though the initial environmental review resulted in a mitigat-

---

[12] In their closing brief, the Bentons argue that the board did not satisfy its procedural requirements for approving a valid use permit. Therefore, they contend that the second use permit is invalid and must be set aside. An appellant may not raise an issue for the first time on appeal in a reply brief. (See *Smith* v. *Board of Medical Quality Assurance, supra,* 202 Cal.App.3d at p. 329, fn. 5.)

ed negative declaration, rather than an EIR. The county properly considered only the incremental differences between the original project and the modification when evaluating whether the modifications to the original proposal would result in any significant environmental impacts. There is substantial evidence to support the board's determination that the relocation of the winery would not cause significant environmental impacts sufficient to require preparation of an EIR.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.