[No. B073104. Second Dist., Div. Seven. Oct. 27, 1993.]

CALIFORNIANS FOR SAFE PRESCRIPTIONS, Plaintiff and Appellant,
v.
CALIFORNIA STATE BOARD OF PHARMACY, Defendant and
Respondent.

1138

COUNSEL

Ronald S. Marks for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and William L. Marcus, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**LILLIE, P. J.**—Plaintiff, a nonprofit corporation comprised of pharmacists throughout California, appeals from a judgment denying its petition for writ of mandamus and for injunctive relief wherein plaintiff challenged various

regulations promulgated by defendant California State Board of Pharmacy (Board) pertaining to pharmacy technicians. Plaintiff contends that the regulations are invalid because the Board amended them on June 17, 1992 without a public hearing; it also challenges the validity of several regulations on the ground that they are inconsistent with enabling legislation (Bus. & Prof. Code, § 4008.5), or other statutes, or on the ground that they lack the consistency or clarity required of administrative regulations.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1991, the Legislature passed Assembly Bill No. 1244, which enacted Business and Professions Code section 4008.5, to authorize the use of pharmacy technicians in the prescription dispensing process.[1] As explained in the Legislative Counsel's Digest to the bill, "Existing law, with specified

---

[1] Those portions of Business and Professions Code section 4008.5 pertinent to this appeal provide:

"(a) As used in this section 'pharmacy technician' means an individual who assists a registered pharmacist in a pharmacy in the performance of his or her pharmacy related duties as specified in subdivision (b).

"(b) Notwithstanding any other provision of law, a pharmacy technician may perform packaging, manipulative, repetitive, or other nondiscretionary tasks, while assisting, and while under the direct supervision and control of, a registered pharmacist.

"(c) This section does not authorize the performance of any tasks specified in subdivision (b) by a pharmacy technician without a registered pharmacist on duty, nor does this section authorize the use of a pharmacy technician to perform tasks specified in subdivision (b) except under the direct supervision and control of a registered pharmacist.

"(d) This section does not authorize a pharmacy technician to perform any act requiring the exercise of professional judgment by a registered pharmacist.

"(e) The board shall adopt regulations to specify tasks pursuant to subdivision (b) which a pharmacy technician may perform under the direct supervision and control of a registered pharmacist. Any pharmacy that employs a pharmacy technician to perform tasks specified in subdivision (b) shall do so in conformity with the regulations adopted by the board pursuant to this subdivision.

"(f)(1) No person shall act as a pharmacy technician without first being registered with the board as a pharmacy technician. The board shall issue a certificate to an applicant who has met any of the following requirements: [¶] (A) Has obtained an Associate of Arts degree in a field of study directly related to the duties performed by a pharmacy technician. [¶] (B) Has completed a course of training specified by the board. [¶] (C) Is eligible to take the board's pharmacist licensure examination. [¶] (D) Has provided satisfactory proof to the board of one year's experience performing the tasks specified in subdivision (b) while employed or utilized as a pharmacy technician to assist in the filling of prescriptions for an inpatient of a hospital, for an inmate of a correctional facility, or experience deemed equivalent by the board. [¶] (2) The performance of duties by a registered pharmacy technician shall be under the direct supervision and control of a registered pharmacist. The pharmacist on duty shall be directly responsible for the conduct of a pharmacy technician. A pharmacy technician may perform the duties, as specified in subdivision (b) only under the immediate, personal supervision and control of, a registered pharmacist. Any pharmacist responsible for a pharmacy technician shall be on the premises at all times, and the pharmacy technician shall be within the pharmacist's view. A pharmacist shall indicate verification of the prescription by initialing the

exceptions, makes it unlawful for any person to manufacture, compound, sell, or dispense, as defined, any dangerous drug or devices, or to dispense or compound any prescription of a medical practitioner unless he or she is a registered pharmacist, as defined. [¶] This bill would, with specified exceptions, permit a pharmacy technician, as defined, to perform packaging, manipulative, repetitive, or other nondiscretionary tasks while assisting, and while under the direct supervision of, a registered pharmacist. [¶] The bill would also impose specific requirements on pharmacy technicians, including being registered with, and certified by, the California State Board of Pharmacy, except that these requirements would not apply to persons employed or utilized as pharmacy technicians in the filling of prescriptions for an inpatient of a hospital or for an inmate of a correctional facility. . . . [¶] The bill would also require the board to adopt regulations to implement the provisions of the bill." (Legis. Counsel's Digest of Assem. Bill No. 1244 (1991-1992 Reg. Sess.).)

On December 6, 1991, the Board caused to be published notice of public hearing on proposed action adopting sections 1793 to 1793.7 and amending section 1717 of title 16 of the California Code of Regulations (all further references to rules are to this source). A public hearing was held on January 21, 1992, on the Board's proposed regulations of pharmacy technicians; on January 29, 1992, the Board noticed certain amendments to the regulations in response to comments received in connection with the public hearing; the notice stated that written comments regarding the latest proposed amendments to the regulations must be sent to the Board by February 14, 1992.

On April 17, 1992, the Board submitted the proposed regulations to the Office of Administrative Law (OAL) for review; on June 1, 1992, the OAL disapproved the proposed regulations, and issued on June 5 a detailed decision explaining the reasons for disapproval.

---

prescription label before the medication is provided to the patient. [¶] (3) The board shall adopt regulations pursuant to this section for the registration of pharmacy technicians. . . .

"(g)(1) The ratio of pharmacy technicians performing the tasks specified in subdivision (b) to registered pharmacists shall not exceed one to one, except that this ratio shall not apply to personnel performing clerical functions pursuant to Section 4008.4. This ratio is applicable to all practice settings except for an inpatient of a licensed health facility, a patient of a licensed home health agency, as specified in paragraph (2), an inmate of a correctional facility of the Department of Youth Authority or the treatment in a facility operated by the State Department of Mental Health, the State Department of Developmental Services, or the Department of Veterans Affairs. [¶] (2) The board my adopt regulations establishing the ratio of pharmacy technicians performing the tasks specified in subdivision (b) to registered pharmacists applicable to the filling of prescriptions for an inpatient of a licensed haelth facility and for a patient of a licensed home health agency. Any ratio established by the board pursuant to this subdivision shall allow at a minimum, at least one pharmacy technician for each pharmacist, except that this ratio shall not apply to personnel performing clerical functions pursuant to Section 4008.4."

On June 17, 1992, the Board noticed amendments to the regulations "[i]n response to the clarity and consistency issues cited by the [OAL]," and stated in its notice that written comments regarding the latest proposed amendments to rules 1793 to 1793.7 must be sent to the Board no later than July 3, 1992.

By letter of June 24, 1992, counsel for plaintiff sent to the Board plaintiff's comments on the proposed regulations and also requested that the latest proposed amendments be subject to public hearing.

The Board rejected the request for another public hearing and submitted the amended regulations to OAL on July 10, 1992; OAL approved them on August 12, 1992; the regulations became effective on September 11, 1992.

On September 17, 1992, plaintiff filed petition for writ of mandamus and complaint for declaratory and injunctive relief. The first cause of action for administrative mandamus sought a writ to command the Board to hold public hearings before implementing the amended regulations; the second cause of action for declaratory relief sought a declaration that certain regulations were invalid for failure to comply with standards of consistency and clarity; a third cause of action for injunctive relief sought to enjoin the implementation of the regulations based on the alleged lack of a public hearing prior to their enactment and on the ground the regulations were inconsistent with legislative intent and lacked clarity.

The Board filed a return and opposition to the petition for writ of mandate. After hearing on November 2, 1992, the court issued a statement of decision wherein it determined that the Board "followed and complied with the provisions of the Administrative Procedure Act (Government Code section 11340 et seq.) and the requirements of the Office of Administrative Law in promulgating and adopting the regulations. [¶] . . . Specifically, [the Board] was not legally compelled to hold a second public hearing after the rejection of the regulations by the Office of Administrative Law and their revision by [the Board.] Pursuant to Government Code sections 11346.8 and 11349.4(a), taken together, such an additional public hearing was only required if there was a substantive change to the regulation which was not so sufficiently related to the original text of the regulation that the public was adequately placed on notice the change could result from the originally proposed regulatory action. Each change to the regulation which petitioner claimed required a new hearing was sufficiently related, within the meaning of Government Code section 11346.8(c). . . . [¶] Nothing in the regulations as adopted was inconsistent with the language or intent of Business and Professions Code section 4008.5. . . . [¶] The regulations do not lack clarity. . . ."

The judgment, filed December 15, 1992, denied the petition for writ of mandate, the request for preliminary injunction, and all other relief requested by plaintiff. Plaintiff filed timely notice of appeal from the judgment.

I

### No Additional Public Hearing Was Required

■ Appellant contends that the Board's June 17, 1992, amendments to the regulations, proposed after the OAL rejected former versions of the regulations on June 1, 1992, required a public hearing before their adoption because they contained significant changes within the meaning of Government Code section 11349.4, subdivision (a).

Government Code section 11349.4 provides in pertinent part: "(a) A regulation returned to an agency because of failure to meet the standards of Section 11349.1, because of an agency's failure to comply with this chapter may be rewritten and resubmitted within 120 days of the agency's receipt of the written opinion . . . without complying with the notice and public hearing requirements of Sections 11346.4, 11346.5, and 11346.8 unless the substantive provisions of the regulation have been significantly changed. If the regulation has been significantly changed . . . the agency shall comply with Article 5 (commencing with Section 11346) and readopt the regulation."

Appellant maintains that the amended regulations resubmitted to the OAL contained significant changes in four respects: (1) language in rule 1793.3 pertained to prescription refill authorization was changed to purportedly allow "a non-licensed person" to request refill authorization without any pharmacist involvement in the procedure; (2) rule 1793.4, subd. (a) was significantly changed by enumerating the fields of study of associate of arts degrees deemed acceptable to qualify for registration as a pharmacist technician; (3) rule 1793.6 allegedly changed the hours of practical and theoretical instruction of the pharmacy technician training course, which would qualify a person for registration as a pharmacist technician; and (4) rule 1793.7, subdivision (f), was changed to allow different ratios of pharmacists to technicians for inpatients of a licensed health facility and patients of a home health agency, as opposed to inmates of Department of Corrections, Department of the Youth Authority, State Department of Mental Health, and other state agencies.

All of the foregoing contentions are without merit as appellant either misconstrues the regulations or fails to acknowledge that the issues raised by

the amendments were in fact addressed at the public hearing and the amendments thus could have been anticipated from the existing record of the originally proposed regulatory action and the public hearing thereon. We address each purported change in the rules alleged by appellant.

A. *Rule 1793.3*

As originally noticed for public hearing, proposed rule 1793.3 provided in pertinent part that "In addition to the pharmacy technician performing the tasks specified in subsection 1793.2, a pharmacy may employ a non-licensed person to type a prescription label or otherwise enter prescription information into a computer record system, but the responsibility for the accuracy of prescription information and the prescription as dispensed lies with the pharmacist who initials the prescription or prescription record. This non-licensed person may also request and receive refill authorization subject to prior review by a pharmacist."

Our record reveals that, based on comments received and OAL's disapproval on the grounds of clarity, the Board amended rule 1793.3 to state: "In addition to employing a pharmacy technician to perform the tasks specified in subsection 1793.2, a pharmacy may employ a non-licensed person to type a prescription label or otherwise enter prescription information into a computer record system, but the responsibility for the accuracy of prescription information and the prescription as dispensed lies with the pharmacist who initials the prescription or prescription record. At the direction of the pharmacist, a non-licensed person may also request and receive refill authorization."

Appellant is wrong when it claims that the rule was changed to allow a nonlicensed person to request refill authorization without any involvement by the pharmacist, as the amended rule changes the former language "subject to prior review by a pharmacist," to "at the direction of the pharmacist." As noted by the Board's Amended Updated Informative Digest prepared in connection with the Board's final version of the regulations after OAL's disapproval of prior regulations, "the phrase 'at the direction of the pharmacist' was substituted for the phrase 'subject to prior review by a pharmacist.' This was done based on comments received and OAL's disapproval on the grounds of clarity. The significant point made in both cases was that the phrase 'subject to prior review by a pharmacist' was vague and subject to many interpretations."

It is clear from the record that the change involved here was not a substantive one; it did not fall within the purview of Government Code

section 11349.4, subdivision (a), and no public hearing was required because of this amendment.

B. *Rule 1793.4, subdivision (a)*

As originally noticed for public hearing, rule 1793.4 provided in pertinent part that "The board shall issue a certificate to an applicant who has met any of the following requirements: [¶] (a) Has obtained at least an associate of arts degree in a field of study directly related to the duties performed by a pharmacy technician."

After the OAL's disapproval of prior versions, subdivision (a) of the rule was changed to read: "(a) Has obtained at least an associate of arts degree in one or more fields of study directly related to the duties performed by a pharmacy technician. Directly related fields of study include: health sciences, biological sciences, physical sciences, or natural sciences."

As explained in the Board's Amended Updated Informative Digest, "To enhance the reader's understanding of the phrase 'directly related,' and in the interest of clarity, a sentence was added showing examples of what 'directly related fields of study' could be."

Moreover, the issue of what level of education and what fields were pertinent to the duties of a pharmacy technician was explored extensively in comments at the public hearing, including comments as to proposed rule 1793.5 (see now rule 1793.6). Proposed rule 1793.5 dealt with *training courses* specified by the board which could qualify a person for registration as a pharmacy technician when the person did not have an associate of arts degree or meet the experience requirements set out in rule 1793.4, subdivisions (d) and (e). The training courses, as originally proposed, were required to provide at least 120 hours of instruction in 8 specified areas, including pharmaceutical and medical terms, abbreviations and symbols used in prescribing and dispensing medication; the general chemical and physical properties of drugs handled in the pharmacy; and calculations required for common dosage determinations, employing both metric and apothecary systems.

Substantial evidence in the record (Gov. Code, § 11350, subd. (b)(1)), supports the Board's conclusion that a person who had obtained an associate of arts degree in any of the fields of study specified in rule 1793.4, subdivision (a), would have acquired the skills and abilities to carry out the tasks of a pharmacy technician as set out in rule 1793.2 and Business and Professions Code section 4008.5, subdivision (b) (*ante*, fn. 1). Accordingly,

in light of our record, we conclude that the amendment of rule 1793.4, subdivision (a), to specify certain fields of study for an associate of arts degree was not a significant change in the substantive provisions of the rule requiring a public hearing under Government Code section 11349.4, subdivision (a).

## C. *Rule 1793.6*

Appellant claims that a prior version of the rule dealing with board-specified training courses to qualify a person for registration as a pharmacy technician provided for 240 hours of theoretical and practical instruction in several general areas, whereas the section was amended to provide at least 120 hours must be in theoretical instruction. Appellant argues that "this is a significant change requiring public discussion as to whether the ratio is appropriate or whether at least half the hours should be in *practical* instruction as opposed to *theoretical* instruction."

Appellant fails to point out that the rule as enacted required "a training period of at least 240 hours of theoretical and practical instruction, provided that at least 120 of these hours are in theoretical instruction . . . ." (Cal. Code Regs., tit. 16, § 1793.6, subd. (c).) Appellant also fails to point out that as originally proposed for the January 1992 public hearing, the rule required *only 120* hours of theoretical and practical instruction; much time at the public hearing was devoted to this issue, as reflected in the testimony of several witnesses, including Claudia St. John, a teacher of a training program for pharmacy technicians. At the public hearing, after some discussion, the board amended the rule to increase the hours of theoretical and practical instruction to 240. Accordingly, our record shows that there had indeed been public comment and discussion on the issue of the appropriate hours and ratio of theoretical to practical instruction. The June 17, 1992 amendment of rule 1793.6 was not a significant change requiring an additional public hearing under the provisions of Government Code section 11349.4, subdivision (a).

## D. *Rule 1793.7*[2]

Appellant contends that the amendment of the rule dealing with the ratio of pharmacists to pharmacist technicians for patients of a licensed health

---

[2]As originally proposed, the rule was numbered 1793.6; as amended and then enacted, the rule was renumbered 1793.7.

As enacted, rule 1793.7, subdivision (f) provides: "Except as otherwise provided herein, the ratio of pharmacists to pharmacy technicians performing the duties specified in subsection 1793.2 shall not be less than one pharmacist on duty for each pharmacy technician on duty. For the preparation of a prescription for an inpatient of a licensed health facility and for a patient of a licensed home health agency, the ratio shall not be less than one pharmacist on

facility and a home health agency required public discussions because the rule created a distinction between those facilities and correctional facilities in Business and Professions Code section 4008.5, subdivision (g). (See fn. 1, *ante*.)

As originally proposed and noticed for public hearing, the rule provided that "Except as otherwise provided herein, the ratio of pharmacists to pharmacy technicians performing the duties specified in subsection 1793.2 shall not be less than one pharmacist on duty for each technician on duty; provided that the ratio shall not be less than one pharmacist on duty for a total of two technicians on duty as to the preparation of a prescription for an inpatient of a licensed health facility and for a patient of a licensed home health agency."

Testimony and written comments from many hospital and pharmacist organizations were received by the Board on this issue at the time of public hearing and also during written comment periods in February and June 1992. In response to the OAL's disapproval of the proposed rules, the Board's Amended Updated Informative Digest explained that rule 1793.7, subdivision (f), "was amended in the interest of clarity and to eliminate what was originally a conflict with Business and Professions Code section 4008.5(g)(1) regarding various exemptions to the ratio requirement." When the Board resubmitted the final version of the rule to the OAL, the amended final statement of reasons also explained: "The board has no authority to establish ratios for certain specified settings. AB 1244 [Bus. & Prof. Code, § 4008.5, subd. (g)] specifically prohibits the board from applying ratios to practice settings that prepare prescriptions for an inmate of a correctional facility of the Department of Youth Authority or the Department of Corrections, and for a person receiving treatment in a facility of the State Department of Mental Health, the State Department of Developmental Services, or the Department of Veterans Affairs. [¶] . . . Although AB 1244 did exempt the hospital inpatient technician from registration, the bill does specify that any pharmacy that employs a pharmacy technician shall do so in conformity with the regulations adopted by the board. The legislation also authorizes the board to establish ratios in the inpatient hospital setting. [¶] It was the consensus of the board that a two to one ratio was the standard in the majority of hospital pharmacies. The recommendation came from the California Society of Hospital Pharmacists and was supported by individual

---

duty for a total of two pharmacy technicians on duty. Pursuant to Business and Professions Code section 4008.5(g)(1), these ratios shall not apply to the preparation of a prescription for an inmate of a correctional facility of the Department of the Youth Authority or the Department of Corrections, or for a person receiving treatment in a facility operated by the State Department of Mental Health, the State Department of Developmental Services, or the Department of Veterans Affairs."

pharmacists. . . . Also, the ratio does not include the 'clerk-typist' or other ancillary personnel who are allowed to assist in the pharmacy by performing functions such as ordering drugs, stocking shelves, and inventorying supplies."

Appellant fails to acknowledge that, as interpreted by the Board, Business and Professions Code section 4008.5, subdivision (g), does *not* give the Board authority to establish a ratio of pharmacists to pharmacy technicians for inmates of correctional facilities and certain other facilities; the statute does permit the Board to adopt regulations establishing the ratio in licensed health facilities and home health agencies. This ratio was established in the originally proposed rule as one to two, and was never changed. Thus, the amendment of rule 1793.7, subdivision (f), was not a significant change requiring additional public hearing under Government Code section 11349.4, subdivision (a).

II

RULE 1793.2 IS CONSISTENT WITH LEGISLATION

Appellant contends that rule 1793.2 is in conflict with Business and Professions Code section 4008.5, subdivision (b), because it permits pharmacy technicians to perform "primarily all of the discretionary acts of the practice of pharmacy," and by "granting to a non-licensed person the primary duties of a pharmacist." Despite appellant's insistence, the regulation simply does not accomplish what appellant says it does; the regulation is consistent with the legislative mandate of subdivision (b) of section 4008.5. (See fn. 1, *ante*.)

Rule 1793.2 states: "Pharmacy technicians may perform packaging, manipulative, repetitive, or other nondiscretionary tasks, while assisting, and while under the direct supervision and control of, a registered pharmacist. 'Nondiscretionary tasks' as used in Business and Professions Code section 4008.5(b), include: [¶] (a) removing the drug or drugs from stock; [¶] (b) counting, pouring, or mixing pharmaceuticals; [¶] (c) placing the product into a container; [¶] (d) affixing the label or labels to the container; [¶] (e) packaging and repackaging."

The foregoing rule is consistent with Business and Professions Code section 4008.5, subdivision (b); in fact, the rule tracks the statutory language fairly closely. To the extent that it specifies certain tasks not specifically set out in the statute, such as labeling, removing drugs from stock, and counting, pouring, or mixing drugs, the rule constitutes a reasonable interpretation of

the legislative mandate allowing pharmacy technicians to perform nondiscretionary tasks while assisting, and while under the direct supervision and control of a registered pharmacist. ■ "In determining whether a specific administrative rule falls within the coverage of the delegated power, our sole function is to decide whether the promulgating agency reasonably interpreted the legislative mandate. In doing so, we may not substitute our independent judgment for that of the administrative agency on the facts or the policy considerations involved. Under this standard of review, we must determine whether the agency reasonably interpreted its legislative mandate when deciding that the challenged regulation was necessary to accomplish the purpose of the statute. Stated another way, our role is limited to determining whether the regulation is reasonably designed to aid a statutory objective." (*Benton* v. *Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1479 [277 Cal.Rptr. 481].)

■ When read properly, and in the context of rule 1793.1,[3] rule 1793.2 is not in conflict with Business and Professions Code section 4008.5. Appellant fails to establish that the rule, when properly read, allows the pharmacy technician to perform any discretionary act or any act requiring the exercise of professional judgment by a registered pharmacist.

Appellant also cites other statutory provisions and regulations of the state or federal government pertaining to prescriptions for controlled substances and radioactive drugs, but fails to establish that rule 1793.2 conflicts with those other provisions or violates other statutory provisions.

### III

### RULE 1793.4 (QUALIFICATIONS FOR REGISTRATION AS PHARMACY TECHNICIAN)

■ Appellant challenges as inconsistent with legislative intent subdivisions (d) and (e) of rule 1793.4. It claims the former improperly interprets

---

[3]Rule 1793.1 provides: "Only a registered pharmacist, or an intern pharmacist acting under the supervision of a registered pharmacist, may: [¶] (a) Receive a new prescription order orally from a prescriber or other person authorized by law. [¶] (b) Consult with a patient or his or her agent regarding a prescription, either prior to or after dispensing, or regarding any medical information contained in a patient medication record system or patient chart. [¶] (c) Identify, evaluate and interpret a prescription. [¶] (d) Interpret the clinical data in a patient medication record system or patient chart. [¶] (e) Consult with any prescriber, nurse or other health care professional or authorized agent thereof. [¶] (f) Supervise the packaging of drugs and check the packaging procedure and product upon completion. [¶] (g) Be responsible for all activities of pharmacy technicians to ensure that all such activities are performed completely, safely and without risk of harm to patients. [¶] (h) Perform any other duty which federal or state law or regulation authorizes only a registered pharmacist to perform. [¶] (i) Perform all functions which require professional judgment."

"one year's experience" as a minimum of 1,500 hours, and the latter improperly permits an applicant who has 1,500 hours of experience as a clerk-typist to qualify for registration as a pharmacy technician. Appellant appears to contend that subdivisions (d) and (e) of rule 1793.4 are inconsistent with subdivision (f)(1) of Business and Professions Code section 4008.5.

Subdivision (f)(1) of section 4008.5 provides in pertinent part that "The board shall issue a certificate to an applicant who has met any of the following requirements: . . . [¶] (D) Has provided satisfactory proof to the board of one year's experience performing the tasks specified in subdivision (b) while employed or utilized as a pharmacy technician to assist in the filling of prescriptions for an inpatient of a hospital, for an inmate of a correctional facility, *or experience deemed equivalent by the board.*" (Bus. & Prof. Code, § 4008.5, subd. (f)(1), italics added.)

Rule 1793.4 provides in pertinent part: "The board shall issue a certificate of registration to an applicant who has met any of the following requirements: . . . [¶] (d) Has at least one year's experience, to include a minimum of 1,500 hours, performing the tasks specified in section 1793.2 while employed or utilized as a pharmacy technician to assist in the preparation of prescriptions for an inpatient of a hospital, for an inmate of a correctional facility, or other experience deemed equivalent by the board. [¶] (e) A person possesses 'experience deemed equivalent by the board' within the meaning of subdivision (d), if he or she has at least 1,500 hours of experience performing the duties specified in section 1793.3 in a pharmacy in the last three years, or has been employed for at least 1,500 hours as a pharmacy technician in another state or by the federal government."

Apparently interpreting the statutory language pertaining to equivalent experience (Bus. & Prof. Code, § 4008.5, subd. (f)(1)(D)) to require experience equivalent to the "tasks specified in subdivision (b)," which tasks are enumerated in rule 1793.2, appellant contends that rule 1793.4, subdivision (e), improperly permits equivalent experience to include the tasks in rule 1793.3, which permits a pharmacist to employ a nonlicensed person (clerk typist) to type a prescription label, enter prescription information into a computer record system, and, at the direction of the pharmacist, request and receive refill authorization.

Appellant's contentions are without merit. Under the appropriate standard of review, we conclude that the Board reasonably interpreted its legislative mandate when it interpreted the statutory phrase "one year's experience," to

include 1,500 hours, as 50 weeks of employment at 30 hours per week reasonably can be considered to constitute a year's experience. Similarly, the board reasonably in deeming "one year's experience" to include the situation when those 1,500 hours are performed by a clerk typist in a pharmacy over a three-year period. (Cal. Code Regs., tit. 16, § 1793.4, subd. (e).) We thus find without merit appellant's contention that the regulations violate the "one year's experience" provision of Business and Professions Code section 4008.5, subdivision (f)(1)(D).

We also conclude that the Board reasonably interpreted the "experience deemed equivalent" provision of Business and Professions Code section 4008.5, subdivision (f)(1)(D), as not being restricted to those "tasks specified in subdivision (b)," but as allowing other nondiscretionary tasks, such as those performed by a clerk typist. In fact, subdivision (b) of section 4008.5 did not specify particular tasks, but only defined general types of tasks a pharmacy technician may perform; subdivision (e) of section 4008.5 required the board to "adopt regulations to specify tasks pursuant to subdivision (b) which a pharmacy technician may perform under the direct supervision and control of a registered pharmacist."

The Board also reasonably interpreted the equivalent experience language in Business and Professions Code section 4008.5, subdivision (f)(1)(D), to mean experience equivalent to one year's experience performing the tasks of a pharmacy technician for an inpatient of a hospital. As stated in the Board's final statement of reasons, wherein the Board responded to comments made prior to or at the time of the January 1992 public hearing, "In a community or outpatient pharmacy, equivalent experience would be that of a 'clerk typist.'"

The Board also explained that "it is the board's opinion that these individuals [people who have worked at least 1,500 hours as a clerk typist in a pharmacy within the last 3 years] have 'equivalent experience' to that of hospital technicians." The Board further explained that "the most difficult task of a pharmacy technician is reading the prescription label to determine what medication should be removed from the shelf. Reading the prescription is a task already being performed by the 'clerk typist.' The 'clerk typist' must be able to read the prescription in order to type the label. The board has allowed the non-licensed 'clerk typist' to perform this task and is proposing to allow the 'clerk typist' to continue to perform this task. The only difference between a 'clerk typist' and the pharmacy technician is the 'clerk typist' cannot walk to the shelf and remove the stock bottle and count to a hundred by fives[, f]unctions that must be performed by the pharmacy

technician. [¶] [The Board] also emphasized that a person who has worked in a pharmacy as a 'clerk typist' for at least a year has already mastered the most difficult function of the pharmacy technician (that is, reading the prescription or the prescription label) and this experience is 'equivalent' to that of a hospital pharmacy technician."

In view of the statutory language, the rulemaking file, and the appropriate standard of review, we conclude that appellant's challenges to rule 1793.4, subdivisions (d) and (e), are without merit.

## IV

### RULE 1793.4, SUBDIVISION (a)

Subdivision (a) of rule 1793.4 provides that the board shall issue a certificate of registration as a pharmacy technician to an applicant who has obtained an associate of arts degree in one or more fields of study directly related to the duties performed by a pharmacy technician, and specifies that such fields include health sciences, biological sciences, physical sciences, or natural sciences. We find without merit appellant's claim that the fields of study specified are not directly related to the duties performed by a pharmacy technician and that the rule does not fall within the legislative mandate that the field of study be directly related to the duties performed by the pharmacy technician. (Bus. & Prof. Code, § 4008.5, subd. (f)(1)(A).)

One who attacks an administrative regulation has the burden of showing that it is unreasonable. (*Benton v. Board of Supervisors, supra*, 226 Cal.App.3d at p. 1478.) Appellant has not met that burden.

On this record, we conclude that the Board reasonably interpreted its legislative mandate when it determined that certain fields of study in the sciences were directly related to the duties of a pharmacy technician. The statutory and regulatory provisions limit the tasks of pharmacy technicians to *nondiscretionary* tasks in removing drugs from stock, and counting, pouring or mixing drugs. Such tasks require careful reading, observation, and counting. Because the Board could reasonably conclude that the specified scientific fields of study also involve careful reading, observation, and counting, it reasonably concluded that an associate of arts degree in the specified scientific fields was directly related to the tasks of the pharmacy technician.

## V

### RULE 1793.7, SUBDIVISION (c), DOES NOT LACK CLARITY

Appellant challenges as unclear certain parts of rule 1793.7, subdivision (c), and also claims that the regulations otherwise lack clarity—not

because of language contained therein, but because the regulations allegedly fail to address certain situations that may arise in the pharmacy setting when the pharmacist temporarily leaves the pharmacy.

We find without merit appellant's claim that the regulations lack clarity because they do not incorporate the requirement of Business and Professions Code section 4008.5, subdivision (f)(2), that "Any pharmacist responsible for a pharmacy technician shall be on the premises at all times, and the pharmacy technician shall be within the pharmacist's view." Rule 1793.7, subdivision (c), specifically provides that "Except for the preparation of prescriptions for an inpatient of a hospital and for an inmate of a correctional facility, a pharmacy technician may perform the duties, as specified in subdivision 1793.2, only under the immediate, personal supervision and control of a registered pharmacist and within the pharmacist's view."[4]

Appellant also complains that the regulations lack clarity because they do not "specify what the pharmacy technician must do if the pharmacist momentarily leaves the pharmacy or performs an activity outside the view of the pharmacy technician," and the regulations fail "to specify the standards or procedures to apply in such circumstances. . . ." ▪ It also maintains that if the regulations permit the pharmacy technician to remain on the pharmacy premises when the pharmacist is *not* on the premises, the regulations would be inconsistent with Business and Professions Code section 4035.2.[5]

Appellant fails to establish that the regulations are inconsistent with Business and Professions Code section 4035.2, which contemplates a pharmacist authorizing entry to employees performing clerical, maintenance, "or

[4] The provision of rule 1793.7, subdivision (c), requiring that the technician perform the duties within the pharmacist's view, is consistent with the statutory language of Business and Professions Code section 4008.5, subdivision (f)(2). Pharmacy technicians assisting in preparing prescriptions for inpatients of hospitals or for inmates of correctional facilities are excluded from the "pharmacist's view" requirement because subdivision (f)(5) of section 4008.5 specifically exempts these types of pharmacy technicians from the requirements of subdivisions (f)(1) through (f)(4) of section 4008.5.

[5] Section 4035.2, enacted in 1965, provides in pertinent part: "No person other than a registered pharmacist . . . or an intern pharmacist . . . shall be permitted in that area, place or premises described in the permit issued by the board pursuant to Section 4035 wherein controlled substances or dangerous drugs or dangerous devices as therein defined are stored, possessed, prepared, manufactured, derived, compounded, or repackaged, except that a registered pharmacist shall be responsible for any individual who enters the pharmacy as described in Section 4035 for the purposes of receiving consultation from the pharmacist or of performing clerical, inventory control, housekeeping, delivery, maintenance or similar functions relating to the pharmacy, if the registered pharmacist remains present in the pharmacy during all times as such authorized individual is present."

similar functions relating to the pharmacy." The duties of a pharmacy technician fall within the language pertaining to "similar functions." We also note that Business and Professions Code section 4008.5, subdivision (b), (*ante*, fn. 1) is prefaced by the phrase "Notwithstanding any other provision of law," thus exempting pharmacy technicians from any contrary provisions of law.

█ We also find to be without merit appellant's claim that the regulations leave to "surmise and conjecture" the respective responsibilities of the pharmacist and technician when the pharmacist leaves the premises. Rule 1793.7, subdivision (c), requires that "Pharmacy technicians must work under the direct supervision of a registered pharmacist and in such a relationship that the supervising pharmacist is on the premises at all times and is fully aware of all activities involved in the preparation and dispensing of medications, including the maintenance of appropriate records." Subdivision (e) of rule 1793.7 provides that "Any pharmacy employing or using a pharmacy technician shall develop a job description and written policies and procedures adequate to ensure compliance with the provisions of Article 12 of this Chapter, and shall maintain, for at least three years from the time of making, records adequate to establish compliance with these sections and written policies and procedures."

The Board reasonably concluded that the specific policies and procedures governing absences, breaks, lunch hours, etc., for each particular pharmacist and pharmacy technician should be individually tailored to each pharmacy because the physical plant, office hours, and number of personnel employed may be different at each pharmacy. The fact that such written policies and procedures will be individually tailored to each pharmacy does not render them, or the governing regulations, vague or ambiguous.

Appellant's claim that the reference to "appropriate records" in subdivision (c) of rule 1793.7 is vague and ambiguous is also without merit; in the context of the complete sentence, the phrase "appropriate records" clearly refers to records pertaining to the preparation and dispensing of medications.

VI

RULE 1793.1

█ Appellant contends that subdivision (c) of rule 1793.1, pertaining to the duties of a registered pharmacist, lacks clarity because it is unclear what is meant by the act of identifying a prescription. When the rule is read in its entirety (*ante*, fn. 3), it is clear that the phrase "Identify, evaluate and

interpret a prescription" refers to a step in the process of properly following the prescription order from a prescriber. In filling the prescription order, the pharmacist may be required to consult with the patient or prescriber, nurse, or other health care professional, and interpret clinical data in a patient chart. In some cases, before a prescription can be filled and dispensed to a patient, the pharmacist may have to use professional judgment to identify, evaluate and interpret it. When considered in its entirety, the rule does not lack clarity.

Appellant argues that the rule is inconsistent with rule 1793.3, which permits a nonlicensed person to request and receive refill authorization. What appellant fails to acknowledge is that a nonlicensed person may only request and receive refill authorization at the direction of the registered pharmacist. The nonlicensed person is thus performing an act not involving any professional judgment and which occurs only *after* the pharmacist has already received the new prescription, identified, evaluated, and interpreted it, dispensed it, and directed the nonlicensed person to request refill authorization. Rule 1793.1 is not inconsistent with rule 1793.3. We conclude that appellant's challenges to rule 1793.1 lack merit.

We regret that appellant's briefs have not been straightforward in their presentation of pertinent details in the record, and that appellant's arguments were fashioned on language taken out of context or on interpretations of language that could not reasonably be made by anyone who had carefully read this record. We also question the effectiveness of such an appellate strategy in light of the increasing caseload of the appellate court and the strain on the state budget caused by such appeals.

## DISPOSITION

The judgment is affirmed.

Johnson, J., and Woods (Fred), J., concurred.