Filed 5/5/2017    Opinion on remand from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRIENDS OF THE COLLEGE OF SAN MATEO GARDENS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAN MATEO COUNTY COMMUNITY COLLEGE DISTRICT et al.,<br><br>    Defendants and Appellants. | A135892<br><br>(San Mateo County<br>Super. Ct. No. CIV 508656) |

This is a case brought under the California Environmental Quality Act (CEQA) (Pub. Resources Code,[1] § 21000 et seq.) that is before us for a second time. In the first appeal, we affirmed the trial court's ruling that defendant San Mateo County Community College District violated CEQA when it responded to changes in a campus renovation project by issuing an addendum to a mitigated negative declaration. We held that the proposed changes constituted a "new" project not subject to an addendum. (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (Sept. 26, 2013, A135892 [nonpub. opn.]), 2013 WL 5377849.) Our state Supreme Court reversed after concluding that we should not have assessed whether the changes constituted a new project, but should have instead assessed whether CEQA's subsequent review provisions were applicable and, if so, whether the addendum was permissible under them. (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 953 (*San Mateo Gardens*).)

---

[1] All further undesignated statutory references are to the Public Resources Code.

Evaluating the project changes as directed, we now conclude that they amounted to a modified project, meaning CEQA's subsequent review provisions apply. We also conclude that defendants' use of an addendum violated these provisions because there is substantial evidence to support a fair argument that the project changes might have a significant effect on the environment. Accordingly, we again affirm the judgment.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

A.      *The Facilities Master Plan, the Mitigated Negative Declaration, and the Addendum.*

The following factual background is taken from the Supreme Court's opinion in *San Mateo Gardens*. Unless otherwise noted, we will use the same defined terms used in that opinion.

"In 2006, [defendants] the San Mateo [County] Community College District and its Board of Trustees (collectively, District) adopted a facilities master plan (Plan) proposing nearly $1 billion in new construction and facilities renovations at the District's three college campuses. At the College of San Mateo (College), the District's Plan included a proposal to demolish certain buildings and renovate others. The buildings slated for renovation included the College's 'Building 20 complex,' which includes a small cast-in-place concrete classroom and lab structure, greenhouse, lath house, surrounding garden space, and an interior courtyard.

"In 2006, the District published an initial study and mitigated negative declaration [(MND)] analyzing the physical environmental effects of implementing the Plan's proposed improvements at the College, including the proposed rehabilitation of the Building 20 complex. The MND stated that, with the implementation of certain mitigation measures, the Plan would not have a significant effect on the environment. In 2007, the District certified its initial study and adopted the 2006 MND.

"When the District later failed to obtain funding for the planned Building 20 complex renovations, it re-evaluated the proposed renovation. In May 2011, the District issued a notice of determination, indicating that it would instead demolish, rather than

2

renovate, the 'complex and replace it with parking lot, accessibility, and landscaping improvements.' The District also proposed to renovate two other buildings, buildings 15 and 17, that had previously been slated for demolition.

"The District concluded a subsequent or supplemental [environmental impact report (EIR)] was not required. It instead addressed the change through an addendum to its 2006 initial study and MND, concluding that 'the project changes would not result in a new or substantially more severe impact than disclosed in the 2006 [MND]. Therefore, an addendum . . . is the appropriate CEQA documentation.'

"The newly proposed demolition of the Building 20 complex, and particularly the demolition of the complex's associated gardens, proved controversial. Certain members of the public, as well as a number of College students and faculty, vocally criticized the demolition proposal at public hearings. The District nevertheless approved demolition of the Building 20 complex in accordance with the addendum.

"Plaintiff Friends of the College of San Mateo Gardens [(Friends)] filed suit challenging the approval. The District thereafter rescinded its original addendum and issued a revised addendum in August 2011. The revised addendum reiterated the original addendum's conclusion but bolstered its analysis. On August 24, 2011, after public comment and discussion, the revised addendum was adopted and demolition of the Building 20 complex was reapproved." (*San Mateo Gardens, supra*, 1 Cal.5th at pp. 946-947.)

  *B.  This Action.*

Friends voluntarily dismissed its initial suit and filed the present action in September 2011 challenging the revised addendum. Friends sought a peremptory writ of mandate ordering the District to set aside its approval of the Building 20 demolition project and to fully comply with CEQA by preparing an EIR and adopting feasible alternatives and mitigation measures. The trial court found that the demolition project was inconsistent with the original plan and that its impacts were not addressed in the 2006 MND. The court granted Friends' petition for a writ of mandate, ordering the District to refrain from taking "further actions adversely affecting the physical

3

environment at the Building 20 Complex pending its full compliance with requirements of CEQA."

The District appealed, and we affirmed. (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist., supra*, 2013 WL 5377849, at p. *6.) We concluded as a matter of law that the District's proposal was a new project, subject to CEQA's initial review standards under section 21151, rather than a modified project subject to the subsequent review provisions of section 21166 and section 15162 of the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.). (2013 WL 5377849, at pp. *4-5.) Because we concluded that the initial review provisions applied, we held that the addendum was improper and that the District was required to conduct an initial study of the project to determine whether an EIR was required. (2013 WL 5377849, at p. *6.)

The District sought review in the Supreme Court, which reversed. (*San Mateo Gardens, supra*, 1 Cal.5th at p. 961.) The Supreme Court explained that our approach in assessing whether the proposal amounted to a new project was incorrect and "would inevitably invite arbitrary results" because neither CEQA nor the cases interpreting it contain any standards for determining whether a project qualifies as "new." (*Id.* at pp. 950-951.) Instead of resting on whether a project is new "in an abstract sense," the "decision to proceed under CEQA's subsequent review provisions must . . . necessarily rest on a determination—whether implicit or explicit—that the original environmental document retains some informational value." (*Id.* at p. 951.) Such an inquiry "is a predominantly factual question . . . for the agency to answer in the first instance, drawing on its particular expertise." (*Id.* at p. 953.) "A court's task on review is then to decide whether the agency's determination is supported by substantial evidence; the court's job ' " 'is not to weigh conflicting evidence and determine who has the better argument.' " ' " (*Ibid.*) The Court emphasized that "occasions when a court finds no substantial evidence to support an agency's decision to proceed under CEQA's subsequent review provisions will be rare, and rightly so; 'a court should tread with extraordinary care' before reversing an agency's determination, whether implicit or explicit, that its initial environmental document retains some relevance to the decisionmaking process." (*Ibid.*)

4

The Supreme Court also explained that our review of an agency's decision that the subsequent review provisions apply "is only the first step. Once a court determines that substantial evidence supports [that] decision . . ., the next—and critical—step is to determine whether the agency has properly determined *how* to comply with its obligations under those provisions. In particular, where, as here, the agency has determined that project changes will not require 'major revisions' to its initial environmental document, such that no subsequent or supplemental EIR is required, the reviewing court must then proceed to ask whether substantial evidence supports that determination." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 953.) Whether there is substantial evidence in this context involves a "judicial review [that] must reflect the exacting standard that an agency must apply when changes are made to a project that has been approved via a negative declaration." (*Ibid.*) Accordingly, the Supreme Court remanded the case to us for further proceedings. (*Id.* at p. 961.) After the Court issued its remittitur, we permitted the parties to file supplemental briefs, which they have done.[2]

## II.
### DISCUSSION

### A.    *The General Legal Framework.*

"In CEQA, the Legislature sought to protect the environment by the establishment of administrative procedures drafted to '[e]nsure that the long-term protection of the environment shall be the guiding criterion in public decisions.' " (*No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 74.) Under CEQA, a public agency generally conducts an initial study to determine if a project "may have a significant effect on the environment." (CEQA Guidelines, § 15063, subd. (a).) Usually, when an agency proposes a project, it must prepare an EIR if the project may have a significant effect on

---

[2] Friends filed a request for judicial notice of a November 22, 2016 Supreme Court order granting review, transferring for reconsideration in light of *San Mateo Gardens*, and depublishing our decision in *Coastal Hills Rural Preservation v. County of Sonoma* (Aug. 31, 2016, A145573 [nonpub. opn.]). The order is unnecessary to our decision, and we therefore deny the request. (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 174 & fn. 4.)

5

the environment. (§§ 21080, subd. (a), 21100, subd. (a), 21151, subd. (a).) But if the initial study shows that there is no substantial evidence that the project may have a significant effect on the environment, CEQA requires the agency to prepare a negative declaration. (CEQA Guidelines, § 15070, subd. (a).) "[I]f the project has potentially significant environmental effects but these effects will be reduced to insignificance by mitigation measures that the project's proponent has agreed to undertake, CEQA requires the . . . agency to prepare a mitigated negative declaration." (*Moss v. County of Humboldt* (2008) 162 Cal.App.4th 1041, 1048.)

CEQA's subsequent review provisions apply when an agency modifies a project after it has certified an EIR or has adopted a negative or mitigated negative declaration.[3] As we explain in more detail below, these provisions require the agency to prepare a subsequent EIR or negative declaration under certain circumstances. (CEQA Guidelines, § 15162, subds. (a)(1) & (b).) They also allow the agency to prepare an addendum, rather than a subsequent EIR or negative declaration, if only "minor technical changes or additions are necessary or none of the conditions described in [CEQA Guidelines] Section 15162 calling for the preparation of a subsequent EIR or negative declaration have occurred." (CEQA Guidelines, § 15164, subd. (b).)

B.     *CEQA's Subsequent Review Provisions Apply to the Project Changes.*

Our first task is to determine whether the Building 20 project is subject to CEQA's initial review provisions, which do not allow for an addendum, or CEQA's subsequent review provisions, which do. *San Mateo Gardens* teaches that this determination depends on whether "the original environmental document"—in this case the 2006 MND—"retains some informational value." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 952.) As already stated, this is a "predominantly factual question" that is "for the agency to answer in the first instance, drawing on its particular expertise." (*Id.* at p. 953.) By preparing an addendum to the MND, the District determined that the MND retained

     [3] All further references to "negative declarations" include mitigated negative declarations unless otherwise noted.

6

informational value. Our role is to decide whether substantial evidence supports the District's determination. (See *ibid.*)

We conclude that it does. The Plan as described in the MND called for the demolition of up to 16 buildings on the College campus and the renovation of several others. It also listed several mitigation measures intended to negate the demolition's impact, such as reducing construction noise, preventing groundwater contamination, and protecting people from exposure to lead and asbestos. The revised plan as described in the addendum added one Building complex to the demolition list (Building 20) and removed two others (Buildings 15 and 17). But the addendum did not affect the plans to demolish the 14 other buildings or remove the measures adopted to mitigate those plans' environmental effects. These circumstances constitute substantial evidence that the MND remained relevant, thus allowing the District to proceed under CEQA's subsequent review provisions.

> C. *The District's Use of an Addendum Contravened CEQA's Subsequent Review Provisions.*

>> 1. The standard of review that applies to an agency's determination that major revisions to a negative declaration are not required.

As we have mentioned, our conclusion that substantial evidence supports the District's decision to proceed under CEQA's subsequent review provisions "is only the first step." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 953.) "Once a court determines that substantial evidence supports an agency's decision to proceed under CEQA's subsequent review provisions (see § 21166; CEQA Guidelines, § 15162), the next—and critical—step is to determine whether the agency has properly determined *how* to comply with its obligations under those provisions." (*San Mateo Gardens*, at p. 953.)

Under CEQA's subsequent review provisions, "no subsequent EIR shall be prepared for [a] project unless the lead agency determines, on the basis of substantial evidence in the light of the whole record" that "[s]ubstantial changes are proposed in the project which will require major revisions of the previous EIR or negative declaration due to the involvement of new significant environmental effects or a substantial increase

7

in the severity of previously identified significant effects." (CEQA Guidelines, § 15162, subds. (a), (a)(1).) "If changes to a project or its circumstances occur or new information becomes available after adoption of a negative declaration," and if no subsequent EIR is required, the agency "shall determine whether to prepare a subsequent negative declaration, an addendum, or no further documentation." (CEQA Guidelines, § 15162, subd. (b).) "An addendum to an adopted negative declaration may be prepared if only minor technical changes or additions are necessary or none of the conditions described in [CEQA Guidelines] Section 15162 calling for the preparation of a subsequent EIR or negative declaration have occurred." (CEQA Guidelines, § 15164, subd. (b).) CEQA Guidelines section 15162 does not clearly specify when the agency must prepare a subsequent negative declaration instead of issuing an addendum or providing no further documentation. But as we discuss further below, a subsequent mitigated negative declaration is at least appropriate where a subsequent EIR would otherwise be required under CEQA Guidelines section 15162 but the project's new significant environmental effects may be avoided through mitigation measures.

The Supreme Court in *San Mateo Gardens* provided guidance for how to apply the subsequent review provisions. It explained that whether "major revisions" will be required as a result of project changes "necessarily depends on the nature of the original environmental document," i.e., whether it was an EIR or a negative declaration. (*San Mateo Gardens, supra*, 1 Cal.5th at p. 958.) It further explained that the appropriate standard of review also depends on the nature of the original environmental document. Although an agency's determination of whether major revisions are required is reviewed for substantial evidence, "judicial review must reflect the exacting standard that an agency must apply when changes are made to a project that has been approved via a negative declaration," as opposed to the deferential standard that applies when the project was originally approved by an EIR. (*Id.* at p. 953; see *Committee for Re-Evaluation of T-Line Loop v. San Francisco Municipal Transportation Agency* (2016) 6 Cal.App.5th 1237, 1247, 1251-1252 [applying *San Mateo Gardens* in case where project originally approved by EIR]; *Latinos Unidos de Napa v. City of Napa* (2013) 221 Cal.App.4th 192,

8

200.) In the words of the Court, "A negative declaration is permitted when 'there is no substantial evidence that the project or any of its aspects *may* cause a significant effect on the environment' [citations], whereas an EIR is required when a project and project alternatives may have significant effects [citation]. When there is a proposal to modify a project originally approved through [an] EIR, no 'major revision' to the initial EIR is required if the initial EIR already adequately addresses any additional environmental effects that may be caused by the proposed modification. *In contrast, when a project is initially approved by negative declaration, a 'major revision' to the initial negative declaration will necessarily be required if the proposed modification may produce a significant environmental effect that had not previously been studied*. [Citation.] Indeed, if the project modification introduces previously unstudied and potentially significant environmental effects that cannot be avoided or mitigated through further revisions to the project plans, then the appropriate environmental document would no longer be a negative declaration at all, but an EIR." (*San Mateo Gardens*, at p. 958, some italics added.) In sum, "an agency [must] prepare an EIR whenever there is substantial evidence that the changes to a project for which a negative declaration was previously approved might have a significant environmental impact not previously considered in connection with the project as originally approved, and courts must enforce that standard." (*Id.* at p. 959.)

Thus, the standard of review we use in evaluating an agency's initial determination of the applicability of the subsequent review provisions to project changes is analytically different from the standard of review we use, after it has been determined that those provisions apply, in then evaluating an agency's determination of whether major revisions are required to a negative declaration. When we apply the first standard, we ask whether "substantial evidence supports an agency's decision to proceed under CEQA's subsequent review provisions." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 953.) The standard requires us to approve the agency's determination when it is supported by substantial evidence, even if other evidence undermines the determination. Similarly, if a project was originally approved by an EIR, we affirm the agency's

determination whether a subsequent or supplemental EIR is required when the determination is supported by substantial evidence, even if there is other evidence to the contrary. (*Committee for Re-Evaluation of T-Line Loop v. San Francisco Municipal Transportation Agency, supra*, 6 Cal.App.5th at pp. 1251-1252; *Latinos Unidos de Napa v. City of Napa, supra*, 221 Cal.App.4th at p. 200.)

But once we have determined that the subsequent review provisions apply to a project approved through a negative declaration, our application of the standard of review changes and is less deferential to the agency. It is less deferential because a negative declaration requires a major revision—i.e., a subsequent EIR or mitigated negative declaration—whenever there is substantial evidence to support a fair argument that proposed changes "might have a significant environmental impact not previously considered in connection with the project as originally approved." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 959, citing *Friends of "B" Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 1002.) Proposed changes might have a significant environmental impact when there is some competent evidence to suggest such an impact, even if other evidence suggests otherwise. (See *Friends of "B" Street*, at p. 1002.) This means that an agency's determination that a major revision to a negative declaration is not required will necessarily lack substantial evidence when a fair argument exists that the project might have a previously unstudied significant environmental impact.[4]

The District argues that the standard of review is "much more subtle and complex." According to the District, *San Mateo Gardens* requires courts to apply the fair argument standard "only in limited subsequent review circumstances that are not present in this case. These limited subsequent review situations exist only where an agency first

---

[4] This is also made clear by the Supreme Court's disapproval of *Benton v. Board of Supervisors* (1991) 226 Cal.App.3d 1467. (*San Mateo Gardens, supra*, 1 Cal.5th at p. 958, fn. 6.) *Benton* considered whether a proposal to relocate a winery previously approved via negative declaration required the preparation of an EIR. The Court of Appeal concluded that no EIR was required because, among other things, substantial evidence supported the agency's conclusion that "[t]he environmental impacts of the modification were not significant." (*Benton*, at p. 1483.) This standard is effectively the reverse of the standard announced by *San Mateo Gardens*.

determines that a previously-adopted negative declaration or MND for an approved project is no longer wholly relevant to proposed project changes, and then secondly identifies one or more entirely new, previously unstudied potentially significant environmental impacts that might result from such changes." (Italics omitted.)

We disagree with the District. There is only one reasonable interpretation of *San Mateo Gardens*: where, as here, an agency originally prepares a negative declaration, we must assess whether there is "substantial evidence that the changes to a project for which a negative declaration was previously approved *might have* a significant environmental impact not previously considered in connection with the project as originally approved." (*San Mateo Gardens, supra*, 1 Cal.5th at p. 959, italics added.) If there is such evidence, we cannot uphold the agency's determination that no major revisions were required. It is of no consequence whether the District believed that the prior MND remained "wholly relevant" or whether the District independently identified a new potentially significant environmental impact. *San Mateo Gardens* held that where a project is originally approved through a negative declaration, "agencies [cannot] evade their obligation to prepare an EIR based on the more demanding 'fair argument' standard, so long as the potential environmental effects of the project are caused by changes in the project after a negative declaration has been approved." (*Id.* at p. 958.) Were we to accept the District's argument, it would create just the sort of "loophole" for agencies that the Supreme Court emphasized does not exist. (*Id.* at p. 957.)

2.       Application of the standard of review in this case.

Having settled on the appropriate standard of review, we turn to assess whether substantial evidence shows that the Building 20 demolition project might have a significant effect on the environment. If substantial evidence shows that it might, there is substantial evidence of a possible significant environmental effect and the District's adoption of the addendum was not permitted under CEQA. (CEQA Guidelines, §§ 15164, subd. (b), 15384, subd. (a).) For CEQA purposes, the types of evidence that constitute substantial evidence include "fact, a reasonable assumption predicated upon fact, or expert opinion supported by fact." (§ 21080, subd. (e)(1); CEQA Guidelines,

11

§ 15384, subd. (b).)  In our review, we do not " 'revisit environmental concerns laid to rest in the original analysis.  Only changed circumstances . . . are at issue.' " (*San Mateo Gardens, supra*, 1 Cal.5th at p. 949.)

A project's negative effect on the aesthetic, natural, scenic, or historical environmental qualities in its vicinity may constitute a significant environmental impact under CEQA.  (*Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903, 936-937; § 21001, subd. (b).)  The question whether a project might have an aesthetic impact "by its very nature is subjective." (*Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist*. (2004) 116 Cal.App.4th 396, 402.)  "As on other CEQA topics, the opinions of area residents, if based on direct observation, may be relevant as to aesthetic impact and may constitute substantial evidence in support of a fair argument; no special expertise is required on this topic." (*Pocket Protectors*, at p. 928.)

Here, the record contains substantial evidence that the planned removal of a portion of the gardens surrounding Building 20 might have a significant aesthetic impact on the College campus.  A long-time professor explained that beginning in the 1960's, the College campus had been developed in a way that gave it "the sterile aspect of an industrial park."  The gardens around Building 20 were the "single surviving semi-natural asylum" on the campus.  As another professor put it, the gardens were "the only place left on campus where students, faculty, and staff can go to get away from the concrete and rigid plots of monoculture plantings that have taken over the campus[.]"  A number of students similarly believed that removal of the gardens would have a severe impact on the aesthetic appeal of the campus, as the gardens provide a "sanctuary" and "sense of calm" for the student body.  Of particular concern in the garden south of Building 20 was the fate of a Dawn Redwood tree, a tree species once thought to be extinct.  Students described the tree as "tall and majestic" and "irreplaceable."  The revised addendum stated that the tree would be preserved as part of the Building 20 demolition.  But an assessment prepared by the District explained that construction associated with the demolition "may cause future health or structural problems" to the tree and that "steps must be taken to protect the tree to reduce future problems."

12

The District tries to discount many of the student and faculty comments because they were provided after the original addendum was adopted in May 2011 but before the revised addendum was adopted that August. But the comments remained relevant after the revised addendum. Although the revised addendum provided additional analysis regarding measures to retain portions of the gardens, the impact on the gardens remained significant: about 20 percent of the garden north of Building 20 would be removed, while over half of the garden south of the building would be removed. Each of the 11 plant and tree species slated for removal or relocation under the original addendum remained subject to removal or relocation under the revised addendum. And, as suggested above, the potential impact to the Dawn Redwood tree remained significant after the revised addendum.

The District also argues that its plan to remove a portion of the gardens around Building 20 was insignificant because the planned removal would result in a loss of less than one-third of one percent of the total landscaped and open space on campus. We are not persuaded. The significance of an environmental impact is not based on its size but is instead " 'measured in light of the context where it occurs.' " (*San Francisco Beautiful v. City and County of San Francisco* (2014) 226 Cal.App.4th 1012, 1026; see also CEQA Guidelines, § 15064, subd. (b) ["An ironclad definition of significant effect is not always possible because the significance of an activity may vary with the setting"].) Here, substantial evidence shows that the gardens around Building 20 were unique in the campus setting. They were "the only place left on campus where students, faculty, and staff [could] go to get away from the concrete and rigid plots of monoculture plantings that have taken over the campus[.]" As such, while the gardens may not have taken up much space, there is substantial evidence to support a fair argument that removing a significant portion of them might have a significant aesthetic impact.

The District's reliance on *Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560 to support the claimed lack of an aesthetic impact is misplaced. There, the plaintiffs challenged the City of Poway's decision to adopt an MND instead of an EIR for a plan to turn a horse boarding facility into 12 homes. (*Id.* at p. 565.) The

13

trial court granted the plaintiffs' petition because there was substantial evidence creating a fair argument that the project would have a significant effect on Poway's "community character." (*Id.* at p. 573.) The appellate court reversed. It explained that the impacts described by Poway citizens were "not aesthetic impacts; rather, they [were] impacts to the collective psyche of Poway residents related to living in the 'City in the Country' and *social* impacts caused by the loss of the [boarding facility]." (*Id.* at p. 578.) No one contended that the project was an "eyesore." (*Id.* at p. 565.) Instead, citizens complained about things such as children's not being able to ride horses any longer and worried that Poway would lose its " 'City in the Country' " feel. (*Id.* at p. 579.)

Here, by contrast, the College community expressed concerns about the aesthetic value of the gardens around Building 20, not just the gardens' social value. The gardens were described as "beautiful" and as having a "positive aesthetic effect on the campus, especially in view of all the concrete that has been laid as part of the new landscaping of the campus." There was widespread concern that replacing the gardens with a parking lot would remove one of the last green spaces on campus.

In sum, there is substantial evidence that the Building 20 demolition project might have a significant environmental effect due to its aesthetic impact on the College campus.[5] We will not, however, order the District to prepare an EIR on remand, as Friends requests. The District can choose to prepare a subsequent MND if it determines that the possibly significant environmental effects will "be reduced to insignificance" through the implementation of mitigation measures. (*Moss v. County of Humboldt, supra*, 162 Cal.App.4th at p. 1048.) What is clear is that the decision to adopt an addendum was improper under CEQA's subsequent review provisions, since an addendum may be prepared only if there are "minor technical changes or additions" or if

---

[5] In reaching this conclusion, we express no opinion on whether the demolition of the Building 20 complex might have other significant environmental effects.

none of the circumstances calling for a subsequent EIR or negative declaration have occurred.[6]  (CEQA Guidelines, § 15164, subd. (b).)

III.
DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

---

[6] Because we conclude that the District must prepare either an EIR or a subsequent MND, we need not address Friends' alternative argument that the provision in CEQA Guidelines section 15164 allowing for the use of an addendum is without statutory authority.

 

                                   _____

                                   Humes, P.J.

We concur:

_____

Margulies, J.

_____

Dondero, J.

*Friends of the College of San Mateo Gardens v. San Mateo County Community College District* (A135892)

*Friends of the College of San Mateo v. San Mateo Community College*
A135892 – Dondero, J., Concurring

I concur in the result of this case. I seek to emphasize that the District incorrectly relied on the addendum process to deal with the modifications of the project approved under the original negative declaration, as detailed in the lead opinion. I do not believe the addendum process was the appropriate method to address the changes contemplated by the District. While the addendum process is limited to instances concerning "minor technical changes or alterations" (Cal. Code Reg., tit. 14, § 15164), the proposal reviewed in this case involved demolishing a major building and transforming into a parking lot an important garden space with unique trees and vegetation. Neither of these changes were discussed in the original negative declaration. These revisions exposed "new, potentially significant environmental effects that had not previously been considered in connection with the earlier environmental study." (See *Friends of College of San Mateo Gardens v. San Mateo Community College District* (2016) 1 Cal.5th 937, 958, fn. 6.) Clearly the employment of the addendum process in a subsequent review study under the facts of this case did not satisfy the exacting standard called for when the original review involved no environmental impact report (EIR).

As indicated in the lead opinion, an agency may conduct a subsequent review of the environmental impact in several ways, including the preparation of an EIR or mitigated negative declaration (MND). Courts will assess the propriety of the subsequent review document by focusing on whether there is substantial evidence the changes to the project previously approved by a negative declaration "might" have new or increased significant environmental effects "not previously considered in connection with the project as originally approved." (*Friends of College of San Mateo Gardens v. San Mateo Community College District*, *supra*, 1 Cal.5th at p. 959.) This means a negative declaration or MND may be appropriate for a subsequent review, especially where the original negative declaration considered the particular subject matter evaluated in the

1

subsequent study.  In a subsequent review evaluated by an MND, as opposed to an EIR, the reviewing court will need to examine the details of the new MND, as well as its assessment of what was originally considered in the initial negative declaration.  (See *Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 674; *Snarled Traffic Obstructs Progress v. City and County of San Francisco* (1999) 74 Cal.App.4th 793, 801.)

_____

Dondero, J.

Trial Court:

San Mateo County Superior Court


Trial Judge:

Hon. Clifford v. Cretan


Counsel for Defendants and Appellants:

Eugene Whitlock, San Mateo County Counsel

James G. Moose, Remy Moose Manley LLP

Sabrina V. Teller, Remy Moose Manley LLP

John T. Wheat, Remy Moose Manley LLP


Counsel for Plaintiff and Respondent:

Susan Brandt-Hawley, Brandt-Hawley Law Group


*Friends of the College of San Mateo Gardens v. San Mateo County Community College District* (A135892)

1